IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA BRUNSWICK DIVISION

CASE NO.: CV223-089

MAKAYLA JANIA HINES, individually,
and as Personal Representative of
the Estate of MICHAEL ANTHONY
HINES, JR., Deceased

     Plaintiff,

     v.

NICHOLAS BURIST; LOCKE
RELOCATIONS LLC; NATIONAL
INDEMNITY COMPANY;
MAYFLOWER TRANSIT LLC;
PAYNE INC., AND
XYZ COMPANIES 1-3

     Defendants.
_____/

## **COMPLAINT FOR DAMAGES**

COMES NOW the Plaintiff, MAKAYLA JANIA HINES individually, and as Personal Representative of the Estate of MICHAEL ANTHONY HINES, JR, Deceased, by and through his undersigned counsel, files his Complaint for Damages, and sues the Defendants, NICHOLAS BURIST, LOCKE RELOCATIONS LLC, NATIONAL INDEMNITY COMPANY, MAYFLOWER TRANSIT LLC, PAYNE INC., and XYZ COMPANIES 1-3, showing this Honorable Court as follows:

1

## NATURE OF COMPLAINT

1.     This is a civil action for damages against Defendants arising out of a motor vehicle collision. Plaintiff brings this action to obtain full and complete relief from defendants.

## PARTIES, JURISDICTION, AND VENUE

2.     The jurisdiction of this Court is invoked pursuant to 29 U.S.C. § 1332, under diversity of citizenship. More than $75,000 is in controversy and Plaintiff and Defendants are citizens of different states for purposes of diversity.

3.     Decedent was a resident and citizen of Duval County, Florida, at the time of his death. The vast majority of the evidence in this action will relate to establishing the value of his life.

4.     Plaintiff Makayla Jania Hines is the duly appointed Personal Representative of the Estate of Michael Anthony Hines, Jr. and is therefore the proper party to bring this action for all damages recoverable by the estate. Makayla Jania Hines was appointed Personal Representative of the estate by the Circuit Court for Duval County, Probate Division. Makayla Jania Hines is the surviving *sui juris* child of the decedent.

5.     Decedent, Michael Anthony Hines, Jr., was a passenger in the semi-tractor trailer driven by Defendant Nicholas Burist.

6.     Defendant Nicholas Burist ("Defendant Driver") is a citizen and resident of Virginia. At all times relevant hereto, Defendant Driver was an employee/agent of

Defendant Mayflower Transit LLC ("Defendant Mayflower" or "Mayflower") and Defendant Locke Relocations LLC ("Defendant Locke" or "Locke"). Defendant Driver operated the 2014 ProStar International tractor Vin # 3HSDJAPR7EN491357 with tag number 59AP8M and trailer leased by non-party Joe Moholland Inc. ("Moholland") from Defendant Payne, Inc. ("Defendant Payne" or "Payne") that killed the Decedent, a passenger in the tractor-trailer. Defendant Driver can be served with process through the Camden County Sheriff at the Camden County Jail in Georgia.

7.     Defendant Driver is a non-resident motorist who availed himself of the laws and protections of the State of Georgia by operating a commercial motor vehicle in Camden County, Georgia, that was owned and/or leased by Moholland, Defendant Locke, and/or Defendant Mayflower.

8.     Defendant Mayflower Transit, LLC is a foreign, for-profit business entity organized and existing under the laws of the state of Missouri. Its principal place of business is located in Fenton, Missouri. Service may be had upon this defendant at One Premier Drive, Fenton, St. Louis County, Missouri 63026.

9.     At all times material herein, Defendant Mayflower engaged in the business of long haul commercial over-the-road trucking and transportation. Additionally, Defendant Mayflower regularly does and solicits business within the state of Georgia. Further, Defendant Mayflower derived substantial revenue from goods used or consumed or services rendered in Georgia.

10.     At all times material herein, Defendant Mayflower was licensed by the U.S. Department of Transportation and was subject to Federal and State laws

governing that industry. Defendant Mayflower's DOT number is 125563 and Defendant Driver was operating with this number on his commercial vehicle at the time of this collision.

11.    Defendant Locke Relocation, LLC is a foreign, for-profit business entity organized and existing under the laws of the state of Virginia. Its principal place of business is located at 1604 Wickham Ave., Newport News, VA, 23607.

12.    At all times material herein, Defendant Locke was licensed by the U.S. Department of Transportation and was subject to Federal and State laws governing that industry. Defendant Locke's DOT number is 2799903.

13.    That, upon information and belief, Defendant Locke is an authorized for hire intrastate carrier who hired Defendant Driver under the authority of and for the benefit of all Defendants.

14.    Defendant Payne, Inc., is a foreign, for-profit business entity organized and existing under the laws of the state of Virginia. Its principal place of business is in Fredericksburg, Virginia. Service may be had upon this defendant through its registered agent, Daniel Payne, at 10411 Hall Industrial Drive, Fredericksburg, Virginia 22408.

15.    That, upon information and belief, Defendant Payne is an authorized for hire interstate carrier who leased the trailer, driven by Defendant Driver, to Moholland.

16.    Defendant National Indemnity Company ("Defendant National Indemnity" or "National Indemnity") covered Defendants Mayflower and Locke, and

4

their employees with a policy of insurance at all times pertinent to this Complaint for Damages and therefore it is subject to the jurisdiction and venue of this Court. Said policy was written for and provided to a motor carrier. This direct action is, therefore, permitted by O.C.G.A. § 40-1-112. Defendant National Indemnity is a foreign insurance company organized and existing under the laws of Nebraska. Defendant National Indemnity may be served through its registered agent, to wit, Andrea Conarro, Esq., Law Office of Andrea Conarro, LLC, 439 South Park Street, Unit A, Dahlonega, GA 30533.

17. Defendant XYZ Companies Nos. 1-3 are not-yet-identified entities which either owned, operated, placarded, maintained, controlled, insured or were otherwise responsible for the tractor and/or trailer in the motor vehicle collision pertinent to this action and/or employed, were a principal of, or otherwise had an agent/principal relationship with the named Defendants on the date of the wreck at issue, or are otherwise liable for the wreck at issue. Defendants XYZ Companies. Nos. 1-3 will be named and served with Summons and Complaint once their respective identities are revealed.

18. That herein, Defendant Mayflower, Defendant Locke, Defendant Payne, Defendant National Indemnity, Defendant Driver, and Defendants XYZ are referred to collectively as the "Defendants."

19. Pursuant to O.C.G.A. § 14-2-504 Defendant Mayflower, Defendant Locke, and Defendant Payne may be served with Process upon their registered agent and/or on the Secretary of State pursuant to Georgia Non-Resident Motorist Act,

O.C.G.A. § 40-12-1 et seq.

20.    In accordance with 28 U.S.C § 1391 (c) and (d), venue is proper in the Southern District of Georgia as Defendants maintain minimum contacts, transact business in the Southern District of Georgia, and are therefore subject to personal jurisdiction. Additionally, and more specifically, venue is appropriate in this Court and this Court has personal jurisdiction over Defendants because the incident causing the tortious injury giving rise to this complaint took place in the Southern District of Georgia. As pleaded herein, subject matter jurisdiction, personal jurisdiction, and venue are proper.

## DEFENDANTS' ORGANIZATIONAL STRUCTURE

21.    At all times relevant to the Complaint, Defendant Driver was employed and working in the course and scope of his employment with Defendant Mayflower, and/or Defendant Locke. Defendant Driver operated the tractor-trailer in furtherance of Defendant Mayflower, and/or Defendant Locke's business.

22.    Defendant Mayflower, and Defendant Locke are liable for all Defendant Driver' acts under the doctrine of respondeat superior, agency, ostensible/apparent agency, and/or master-servant doctrines.

23.    Upon information and belief, Defendant Locke is an agent for Defendant Mayflower.

24.    Defendant Mayflower authorized and was responsible for the use of said tractor- trailer by Defendant Driver, and under its authority as a motor carrier. Defendant Mayflower's DOT numbers were displayed on the tractor trailer.

25.    Defendant Mayflower was the broker for the relocation of household goods through their agents, Defendant Locke and Defendant Driver.

26.    Defendant Mayflower chose to retain, and/or hire Defendant Locke and Defendant Driver without ensuring that they could operate in a safe and competent manner by, in part, failing to ensure the proper selection of an authorized interstate motor carrier who had the proper financial security.

27.    Defendant Mayflower failed to properly lease and/or terminate the lease of the commercial motor vehicle operated by Defendant Driver at the time of the collision. Defendant Mayflower is also liable for the negligent brokerage and/or arranging/facilitating the shipping of household goods through Defendant Locke, who it knew or should have known was untrained, unskilled, unsuitable, unexperienced, and/or unqualified to do so.

28.    Federal Motor Carrier Safety Regulations require an interstate carrier that leases a vehicle to (1) make the arrangement in writing signed by the parties specifying the duration and the compensation to be paid by the carrier, (2) carry a copy of the arrangement in each motor vehicle to which it applies during the period the arrangement is in effect, (3) inspect the motor vehicle and obtain liability and cargo insurance on it, and (4) have control of and be responsible for operating the vehicle in compliance with the federal regulations and other applicable laws as if the motor vehicle was owned by the carrier.

29.    However, Defendants were negligent in failing to properly terminate the lease within the time prescribed or failed to have a reasonable time period, and

as a result, the relationship continued with Mayflower, by and through Defendant Driver and Defendant Locke. This is further evidenced by the DOT, License Plate numbers, identification numbers, placards, and signage on the truck/trailer at the time of the incident.

30.    Moholland acted as an agent of Defendant Mayflower. As a part of the agency, Moholland uses and stores Defendant Mayflower trucks/trailers on its address listed for business activity. Further, many employees, agents, representatives, and officials are shared by both Defendant Mayflower and Moholland.

31.    Upon information and belief, Defendant Driver has an email address that is registered to Mayflower ending in @mayflower.com.

32.    That upon information and belief, Defendant Mayflower and Joe Moholland, Inc. are so intertwined within the corporate web as to constitute a single business enterprise, joint venture, and/or partnership.

33.    That injustice to Plaintiff and/or others would result were this Court to recognize any legal distinction between Defendant Mayflower and Moholland, when the entities themselves have blurred, ignored, or wholly erased such distinctions. The operation of Moholland and Defendant Mayflower are essentially one business acting as a broker for the shipping company that it negligently hired and retained, Defendant Locke.

34.    The purpose of Moholland and Defendant Mayflower commingling vehicles and property is based on shipper/broker liability. The goal between the two

8

and Defendant Locke is avoiding safety regulations by the practice of leasing equipment from and to non-regulated carriers. Therefore, the Defendants attempt to shield themselves from liability as carriers as part of lease agreements, indemnity agreements, and purported due diligence searches. These Defendants are attempting to shift blame to the shipper, Defendant Locke. Due to Defendant Locke having little or no experience with long-haul traveling and/or interstate traveling per the FMSCA, the Defendants sham safety regulations and their financial responsibility, attempting to shift the same to shippers, lessors, leases, employees and/or other members of the public.

35.     Simply, the relationship formed between Defendants Locke, and Defendant Mayflower was designed with the purpose of skirting financial and safety responsibility through their driver, Defendant Driver.

36.     No reasonably prudent shipper, broker, agent, or master would have hired or allowed Defendant Driver to take possession of their truck/trailer.

37.     Defendants knew or should have known that Defendant Locke is not authorized to travel or operate in interstate commerce.

38.     That upon information and belief, at all times relevant hereto, Defendant Mayflower, and Defendant Locke, were acting in concert. Defendant Locke was acting as authorized agent for Defendant Mayflower, and all improper acts and unlawful conduct of Defendants Locke and/or Defendant Driver are attributable to Defendants Locke and Mayflower.

39.     Defendant Mayflower uses its marketing and advertising to encourage

and promote the services of its agents, Defendant Locke, for its own pecuniary gain.

## GENERAL ALLEGATIONS

40.    Plaintiff incorporates herein by reference all the allegations of the previous paragraphs of this Complaint.

41.    That on or about July 1, 2022, Defendant Driver, in his capacity as an employee/agent and/or apparent agent of Defendant Locke and Defendant Mayflower, was traveling southbound on I-95 in Camden County, Georgia.

42.    That on July 1, 2022, Michael Anthony Hines, Jr. was a passenger traveling in the sleeper compartment of the tractor owned, leased, controlled, and/or operated by Defendants.

43.    That on or about July 1, 2022, Defendant Driver, after recklessly colliding with other vehicles, left his lane of travel and began to travel through the center guardrails.

44.    Defendant Driver suddenly and without warning left his proper lane of travel, crossed over the median and trigged a series of collisions involving the tractor trailer he was operating, resulting in the tractor sleeper cab being forcefully struck and intruded upon, causing Michael Anthony Hines, Jr's death.

45.    As a result of Defendants' negligence, four people died, including decedent Michael Anthony Hines, Jr., and several more were hospitalized and/or injured.

46.    As set forth in the Georgia Motor Vehicle Crash Report, specifically Report Number C000745264-01, Defendant Driver was driving under the influence

of drugs and/or alcohol which was also one of the contributing factors of Plaintiff's death. This action by Defendant Driver constitutes a violation of O.C.G.A § 40-6-391 and is negligence per se under Georgia law.

47.     As a result of the incident, Defendant Driver received several citations for violation of Georgia law from the Georgia State Patrol by the investigating officer. These citations were issued as a result of violations of: (1) O.C.G.A. § 40-8.76.1; (2) O.C.G.A. § 40-6-393(A); (3) O.C.G.A. § 16-13-2(b); (4) O.C.G.A. § 40-6-253; (5) O.C.G.A. § 40-6-49; (6) O.C.G.A. § 40-6-48; (7) O.C.G.A. § 40-1-8(b)(2)(E); (8) O.C.G.A. § 40-6-391(a)(1-5); and (9) O.C.G.A. § 40-6-39. These violations of Georgia law by Defendant Driver are negligence per se.

48.     In addition to the above, Defendant Driver was also negligent per se in violating laws of the State of Georgia. Specifically, Defendant Driver violated O.C.G.A § 40-6-48 in failing to maintain his lane of travel; O.C.G.A § 40-6-93 in failing to exercise due care; O.C.G.A § 40-6- 390 for driving reckless; and O.C.G.A § 40-6-394 for causing serious injury by a vehicle.

49.     That at all times material hereto, Defendant Driver had a duty to operate the vehicle he was driving in a safe and prudent manner and to avoid injuring other motorists and individuals, specifically, Plaintiff.

50.     Defendant Driver chose not to operate the tractor-trailer with the due care exercised by individuals in like or similar circumstances and operated the vehicle in a manner showing a negligent, willful, and wonton disregard for the safety of others, including Plaintiff. All Defendants are legally responsible for these actions

and inactions of Defendant Driver.

51.     Following the collision, as relevant to Defendants, pertaining to the negligent maintenance, repair, operation, and entrustment of the vehicle, the truck/trailer had the following deficiencies in violation of Federal Motor Carrier Safety Regulations: 393.75(a)(1) (Tire-ply or belt material exposed: Tractor: Left side axle number 1 outside tire has belt material exposed); 393.75(a)(3) (Tire-flat and/or audible air leak: Tractor: Right side axle number 1 tire is flat.); 393.48(a) (Inoperative/defective brakes: Tractor: Right side axle number 3 brake drum friction surface is contaminated by oil and grease); 396.5(b) (Hubs - Wheel seal leaking - inner wheel: Tractor: Right side axle number 3 inner wheel seal actively leaking); 393.207(a) (Axle positioning parts defective/missing: Tractor: Left side axle number 1 u-bolt assembly is cracked); 393.75(a)(3) (Tire-flat and/or audible air leak: Trailer: Right side axle number 1 and 2 outside tire is flat); 393.201(a) (Frame cracked / loose / sagging / broken: Trailer: Floor is sagging); 393.11 (No or defective lighting devices or reflective material as required: Trailer: 4 of 6 side marker lamps missing); 393.83(g) (Exhaust leak under driver and/or sleeper compartment: Tractor: Exhaust leak under cab, whole in exhaust.); 393.48(a) (Inoperative/defective brakes: Trailer: Right side axle number 1 brake is defective. Brake drum is rusted.); 393.60(c) (Damaged or discolored windshield: Tractor: Windshield cracked.); and 396.3(a)(1) (BRAKES OUT OF SERVICE: The number of defective brakes is equal to or greater than 20 percent of the service brakes on the vehicle or combination).

52.     One or more of the above deficiencies existed prior to the collision, and

Defendants knew or should have known the nature and extent yet chose not to maintain and/or repair in accordance with industry standards, and the rules and regulations of the Federal Motor Carrier Safety Act and Georgia law.

53.     Decedent acted with reasonable care under the conditions and circumstances then existing.

54.     Decedent did nothing to contribute to his fatal bodily injuries.

## COUNT ONE - NEGLIGENCE OF DEFENDANT DRIVER, NICHOLAS BURIST

55.     Plaintiff incorporates herein by reference all the allegations of the previous paragraphs, of this Complaint.

56.     At all times material hereto, Defendant Driver was a professional driver with a commercial driver's license, and, at the time of the incident, was driving a commercial vehicle entrusted to him by Defendant Locke and Defendant Mayflower.

57.     At all times material hereto, Defendant Driver was driving a commercial motor vehicle in interstate commerce and was subject to not only to Georgia traffic laws and trucking safety regulations, but also the Federal Motor Carrier Safety Regulations.

58.     At all times material hereto, Defendant Driver owed a duty of care to maintain and operate its commercial motor vehicle in a safe manner in compliance with all safety rules, including statutes, rules and regulations governing the operation and maintenance of vehicles including tractor trailers upon Georgia, and

interstate roadways.

59.     Defendant Driver was negligent in the operation, maintenance, and inspection of the commercial motor vehicle he was driving.

60.     Defendant Driver was driving in a grossly negligent manner, including driving recklessly and erratically, before losing control of his tractor trailer and severely injuring the Plaintiff.

61.     Defendant Driver's actions in failing to operate the commercial vehicle sober, stop and/or slow his tractor trailer, or obey the rules of the road showed willful misconduct or an entire want of care, which would raise the presumption of conscious indifference to consequences as defined by O.C.G.A. § 51-12-5.1. Thus, Plaintiff is also entitled to an award of punitive damages.

62.     Defendant Driver was negligent, grossly negligent, and/or negligent per se which constitutes the direct and proximate cause of the injury to Plaintiff also consisted of, but is not limited to the following:

a)      Not maintaining control of his vehicle in violation of O.C.G.A. § 40-6-48;

b)      Driving an unsafe vehicle in violation of O.C.G.A. § 40-8-7;

c)      Not keeping his vehicle under control at all times, in violation of O.C.G.A. § 40-6-390;

d)      Not exercising due care in operating a motor vehicle in violation of O.C.G.A. § 40-6-241;

e)      Acting in reckless disregard for the safety of persons or property in violation of O.C.G.A. § 40-6-241.2;

f)      Not keeping a proper lookout;

g)      Driving under the influence of alcohol and/or drugs in violation

of O.C.G.A. § 40-6- 391;

h)    Not adhering to safe driving principles expected of professional drivers;

i)    Not operating the truck in accordance with generally accepted safety principles for professional drivers and/or the commercial motor vehicle industry;

j)    Not operating the truck in a safe and prudent manner in view of the conditions that existed at the time of the subject collisions;

k)    Violating the Georgia Uniform Rules of the Road including O.C.G.A. § 40-6-49 (following too closely); O.C.G.A. § 40-6-180 (failing to drive his vehicle at a reasonable and prudent speed under the conditions); O.C.G.A. § 40-6-390 (driving a vehicle in reckless disregard of the safety of persons or property); and any other violations, each of which constitute negligence per se;

l)    Otherwise failing to act reasonably and prudently as a professional commercial driver should under the circumstances; and

m)    Such other specifications of negligence that shall be added by amendment or proven at trial.

63.    At the time of the subject wreck, Defendant Driver had a duty to drive in conformity with the Federal Motor Carrier Safety Regulations and Georgia law as well as the industry and corporate standards and guidelines emanating from these safety regulations and Georgia law, including, but not limited to, the Required Knowledge and Skills set forth in 49 CFR §§ 383.111 and 383.113 as well as the mandates of 49 CFR §§ 390-395.

64.    Alone or in conjunction with the negligence of the other defendants, Defendant Nicholas Burist's negligence directly and proximately caused Plaintiff's injuries and damages. Defendant Nicholas Burist is therefore liable for Plaintiff's injuries and damages.

## COUNT TWO - NEGLIGENCE OF
## DEFENDANT MAYFLOWER TRANSIT

65.   Plaintiff incorporates herein by reference all the allegations of the previous paragraphs, of this Complaint.

66.   At all times material hereto, Defendant Driver was an employee, agent, and/or apparent agent of Defendant Mayflower acting within the scope of course of his employment or agency.

67.   Defendant Locke acted as an agent of Moholland and in furtherance of Moholland's business, related to the trailer attached to the tractor, Defendant Driver was operating under dispatch and under the authority granted to Defendant Driver by Defendant Mayflower on the date of the fatal crash.

68.   At all times material hereto, Defendant Driver was operating a commercial motor vehicle under dispatch and under the authority granted to Defendant Driver by Defendant Mayflower.

69.   Defendant Driver was operating on behalf of Defendant Mayflower and in furtherance of the business of Defendant Mayflower.

70.   At all times material hereto, Defendant Mayflower, directly or thought its agents/servants/employees, maintained immediate direction and control of Defendant Driver, and the vehicle he was operating.

71.   Plaintiff suffered injuries, harm, death, and damages as a result of Defendant Mayflower's employee's operation of the subject vehicle in a negligent and reckless manner.

72.   Plaintiff suffered injuries, death, harm, and damages as a result of

Defendant Mayflower's employee's operation of the subject vehicle in a negligent and reckless manner.

73.     Plaintiff suffered injuries, harm, and damages as a result of Defendant Mayflower's employee's operation of the subject vehicle in a negligent and reckless manner.

74.     Defendant Mayflower is liable for its own negligence and for the tortious acts, negligence and for the negligent actions and omissions of Defendant Driver and/or Defendant Locke pursuant to the doctrine of respondeat superior, rules of agency and by operation of common law, apparent agency, and Federal Motor Carrier statutes and regulations.

75.     As a direct and proximate result of the foregoing breaches of duties, Plaintiff suffered the injuries and damages laid out herein.

## COUNT THREE – VICARIOUS LIABILITY – DEFENDANT MAYFLOWER, AS STATUTORY EMPLOYER UNDER FMSCR

76.     Plaintiff incorporates herein by reference all of the allegations of the previous paragraphs, of this Complaint.

77.     The Federal Motor Carrier Safety Regulations ("FMCSR"), define two types of motor carriers: (a) "private motor carriers" as "a person who provides transportation of property or passengers, by commercial motor vehicle, and is not a for-hire motor carrier," and (b) "for-hire motor carriers" as "a person engaged in the transportation of goods or passengers for compensation." 49 C.F.R. § 390.5.

78.     When used in the FMCSR, the term "motor carrier" "means a for-hire motor carrier or a private motor carrier" and "includes a motor carrier's agents,

officers and representatives as well as employees responsible for hiring, supervising, training, assigning, or dispatching of drivers and employees concerned with the installation, inspection, and maintenance of motor vehicle equipment and/or accessories." 49 C.F.R. § 390.5.

79.    The FMCSR defines a "driver" as "any person who operates any commercial vehicle." 49 C.F.R. § 390.5.

80.    The FMCSR defines "employee" as "any individual, other than an employer, who is employed by an employer and who in the course of his or her employment directly affects commercial motor vehicle safety. Such term includes a driver of a commercial vehicle (including an independent contractor while in the course of operating a commercial motor vehicle), a mechanic, and a freight handler. Such term does not include an employee of the United States, any State, any political subdivision of a State, or any agency established under a compact between States and approved by the Congress of the United States who is acting within the course of such employment." 49 C.F.R. § 390.5 (emphasis added).

81.    The FMCSR defines "employer" as "any person engaged in a business affecting interstate commerce who owns or leases a commercial motor vehicle in connection with that business, or assigns employees to operate it, but such term does not include the United States, any State, any political subdivision of a State, or an agency established under a compact between States approved by the Congress of the United States." 49 C.F.R. § 390.5.

82.    The FMSCR defines "broker" as "a person who, for compensation,

arranges, or offers to arrange, the transportation of property by an authorized motor carrier. Motor carriers, or persons who are employees or bona fide agents of carriers, are not brokers within the meaning of this section when they arrange or offer to arrange the transportation of shipments which they are authorized to transport and which they have accepted and legally bound themselves to transport." 49 C.F.R. § 371.2(a) (emphasis added).

83.     Defendant Mayflower is a "motor carrier" subject to the Federal Motor Carrier Safety Regulations.

84.     Defendant Mayflower operates under USDOT number 2881058; MC Number 2934; and Freight Forwarding Number 7137. 97. As part of its operations as a motor carrier, Defendant Mayflower maintains a fleet of trucks and other equipment, including owned and leased trailers.

85.     Defendant Mayflower was legally bound to safely, and in compliance with all applicable laws, transport the cargo and/or equipment used to transport such cargo that was being transported by Defendant Driver at the time of the wreck which caused the death of Plaintiff.

86.     Defendant Mayflower was acting as a "motor carrier" of the tractor trailer at the time of its collision and was the statutory employer of Defendant Driver.

87.     Defendant Mayflower arranged for Moholland and Defendant Locke to transport the cargo that Defendant Mayflower was legally bound to transport.

88.     At all times relevant to this Complaint and to the motor vehicle collision at issue, the tractor-trailer being operated by Defendant Driver contained markings

identifying it as it being "Operated by Mayflower Transit Fenton, MO."

89.    Defendant Mayflower had knowledge or should have had knowledge of Defendant Driver transporting goods under its authority within days and/or weeks prior to the subject collision.

90.    Defendant Mayflower, through agreement with Moholland and/or Defendant Locke, had the right to control and/or did control the activities and work of Moholland and/or Defendant Locke and its drivers, including Defendant Driver, by:

a)    Defining the delivery route drivers must take while engaged in the transport of Mayflower loads and/or equipment;

b)    Requiring that drivers receive its advance approval for any trip layover time, driver detention, route changes, payment of tolls, and other matters of operation;

c)    Establishing set times for the pickup and delivery of Defendant Mayflower loads for drivers;

d)    Such other means of control over the operations, activities, and work of drivers operating as provided for by Mayflower's agreements with Moholland and/or Locke;

e)    Listing Defendant Driver as an agent on its website and giving him an email address within its domain;

f)    Allowing or ordering Defendant Driver to operate its equipment, including its trailer;

g)    Providing that Defendant Mayflower was not required to pay any money to Moholland unless it followed specifically Mayflower's rules, policies, and procedures in the transit or delivery of any cargo assigned by Defendant Mayflower to Moholland; and

h)    Requiring Moholland to keep and provide documents to and for Defendant Mayflower related to routes, deliveries, payments, and other matters.

91.    At all times relevant to this Complaint and the motor vehicle collision

that is the subject of this action, Defendant Mayflower was Defendant Driver's statutory employer while Defendant Driver was engaged in the transportation of Mayflower's loads and/or equipment.

92.     Defendant Driver was a statutory employee of Defendant Mayflower under 49 U.S.C. § 31132(2).

93.     Accordingly, Defendant Mayflower is vicariously liable under the doctrine of respondeat superior for Defendant Driver's negligent acts and/or omissions committed during the course and scope of his agency and/or employment, and Defendant Driver was operating under the authority of Mayflower, or, at minimum, under the shared authority of Defendants Mayflower and/or Locke.

94.     Therefore, Plaintiff may recover from Defendant Mayflower for injuries and damages.

## COUNT FOUR - NEGLIGENCE OF DEFENDANT LOCKE RELOCATIONS

95.     Plaintiff incorporates herein by reference all of the allegations of the previous paragraphs, of this Complaint.

96.     At all times material hereto, Defendant Driver was an employee, agent, and/or apparent agent of Defendant Locke acting within the scope of course of his employment or agency.

97.     At all times material hereto, Defendant Driver was operating a commercial motor vehicle under dispatch and under the authority granted to Defendant Driver by Defendant Locke.

98.     Defendant Driver was operating on behalf of Defendant Locke and in

furtherance of the business of Defendant Locke.

99.    Defendant Locke, and/or Defendant Mayflower gave Defendant Driver and their employees/agents authority to perform services on their behalf.

100.    Plaintiff suffered injuries, death, harm, and damages as a direct and proximate result of Defendant Locke's Employee's operation of the subject vehicle in a negligent and reckless manner.

101.    Defendant Locke is liable for its own negligence and for the tortious acts, negligence and for the negligent actions and omissions of Defendant Driver and Defendant Mayflower pursuant to the doctrine of respondeat superior, rules of agency and by operation of common law and Federal Motor Carrier statutes and regulations.

102.    Therefore, Plaintiff may recover from Defendant Locke for their injuries and damages.

## COUNT FIVE - NEGLIGENT HIRING, TRAINING, RETENTION, SUPERVISION, AND MAINTENANCE/REPAIR BY DEFENDANTS LOCKE, AND MAYFLOWER

103.    Plaintiff incorporates herein by reference all of the allegations of the previous paragraphs, of this Complaint.

104.    Defendants Locke and Mayflower have certain duties and responsibilities, including but not limited to those defined by the Federal Motor Carrier Safety Regulations, State trucking safety regulations and trucking industry standards.

105.    Those duties include the duty to properly qualify Defendant Driver, the duty to properly train Defendant Driver, the duty to properly supervise Defendant

Driver, the duty to properly inspect and maintain its vehicles, and the duty to otherwise establish and implement appropriate management controls and systems for the safe operation of its commercial motor vehicle.

106.    Defendant Locke, and Defendant Mayflower were negligent and/or grossly negligent in one or more of the following particulars:

a)    In negligently entrusting the vehicle to someone Defendants knew or should have known would operate the vehicle without using due care and without regard for the safety and rights of the public using the roadway and the Plaintiff in particular;

b)    In negligently entrusting the vehicle to someone they knew or should have known would operate the vehicle in a negligent, grossly negligent, careless, reckless, willful, wanton, and unlawful manner as to create a dangerous situation and render a collision inevitable or highly likely, in disregard of the laws of the State of Georgia;

c)    In negligently entrusting the vehicle to someone they knew or should have known would fail to exercise that degree of care that a reasonable and prudent person would have exercised under the same or similar circumstances;

d)    In choosing not to appreciate the gravity and seriousness of having an unsafe, unqualified driver with a history of careless driving use their vehicle;

e)    In choosing not to ensure that the driver of their vehicle would comply with all applicable statutory codes and regulations;

f)    In choosing not to properly hire, train, and/or supervise their employee/agent driver Defendant Driver to ensure that the vehicle was driven and operated in a safe and proper manner;

g)    In choosing not to properly train and/or supervise their employee/agent driver Defendant Driver and others involved with maintenance, repair, regulatory compliance, and/or safety to ensure that proper pre-trip, post-trip, periodic, quarterly, and/or annual inspections were performed, including properly on the subject vehicle, and its component parts;

h)    In choosing, by and through their employee/agent driver

23

Defendant Driver, not to have the required driver knowledge necessary in order to safely operate the subject vehicle, including but not limited to the procedures to obey traffic laws and the rules of the road;

i)   In choosing not to create, maintain, adhere to, and/or implement appropriate policies and procedures to ensure alcohol and drugs were not being used or consumed by its employees and drivers;

j)   In choosing not to create, maintain, and/or implement appropriate policies and procedures related to inspection and safety for its drivers, including their employee/agent driver Defendant Driver, and for safety, regulatory compliance, and/or inspection, maintenance, and service of motor vehicle;

k)   In choosing not to properly and/or timely inspect, maintain, service, and/or repair the subject vehicle/trailer and its component parts to ensure that the same could be utilized and operated safety;

l)   In choosing not to use due care;

m)   In any other acts that represent a breach of the statutory or common laws of the State of Georgia or the United States; and

n)   In any other such manner that Plaintiff may become aware of through discovery and/or at trial.

107.   Additionally, Defendant Locke and/or Defendant Mayflower knew or should have known about Defendant Driver's drug and/or alcohol addiction, frequent use of, and abuse of drugs.

108.   Defendants Locke and/or Mayflower knew or should have known about Defendants current use, abuse and/or addiction to drugs and/or alcohol.

109.   Defendant Locke and/or Mayflower knew or should have known that Defendant Driver's current and/or past addiction to drugs and alcohol and/or abuse of drugs could cause severe injuries and/or death to the general public, including the Plaintiff.

24

110.    Despite having the aforesaid knowledge, Defendant Locke, and Defendant Mayflower hired and retained Defendant Driver and allowed him to operate a vehicle while in its employ.

111.    Despite knowing, or having reasons to know of the above, Defendants failed to test for use of drugs and/or alcohol, terminate Defendant Driver prior to this collision, and continued to allow him to operate the commercial motor vehicle to facilitate Defendants' business interests.

112.    Defendant Mayflower and Defendant Locke not only allowed Defendant Driver to operate the vehicle within the state of his residence, Virginia, but allowed, facilitated, and encouraged Defendant Driver's transportation throughout the United States without properly monitoring or supervising this driver.

113.    Defendant Mayflower was independently negligent in hiring, qualifying, training, entrusting, supervising, and retaining Defendant Driver in connection with his operation of its commercial motor vehicle.

114.    Defendant Locke was independently negligent in hiring, qualifying, training, entrusting, supervising, and retaining Defendant Driver in connection with his operation of its commercial motor vehicle.

115.    As a direct and proximate result of the negligence, gross negligence, carelessness, recklessness, willfulness and wantonness of Defendants, as is set forth more fully herein, Plaintiff was suffered severe injuries, has endured, and will endure, pain and suffering, suffered mentally and emotionally, and have incurred, and will incur, various medical expenses.

116.    Defendant Locke, and Defendant Mayflower are liable for all damages allowed by law for the injuries, damages, and losses sustained by the Plaintiff.

## COUNT SIX – NEGLIGENCE OF PAYNE

117.    Plaintiff incorporates herein by reference all of the allegations of the previous paragraphs, of this Complaint.

118.    Defendant Payne is a motor carrier as defined by the Federal Motor Carrier Safety regulations and was engaged in interstate commerce.

119.    Defendant Payne is subject to the Federal Motor Carrier Safety Regulations.

120.    Upon Information and belief, Defendant Payne owned the trailer being hauled and/or operated by the Defendant driver and leased the trailer to Moholland.

121.    Defendant Payne has certain duties and responsibilities as defined by the Federal Motor Carrier Safety Regulations and industry standards, including a duty to properly inspect, repair and maintain its trailers for the safe operation of the trailers.

122.    Defendant Payne was negligent in failing to meet its duties and responsibilities under the Federal Motor Carrier Safety Regulations, Georgia law, and industry standards in the inspection, maintenance, and repair of the trailer operated by the Defendant Driver in the following ways:

a)      Driving an unsafe vehicle in violation of O.C.G.A. § 40-8-7;

b)      393.75(a)(3) (Tire-flat and/or audible air leak: Trailer: Right side axle number 1 and 2 outside tire is flat);

c)      393.201(a) (Frame cracked / loose / sagging / broken: Trailer: Floor is sagging);

d)      393.11 (No or defective lighting devices or reflective material as required: Trailer: 4 of 6 side marker lamps missing);

e)      393.83(g) (Exhaust leak under driver and/or sleeper compartment: Tractor: Exhaust leak under cab, whole in exhaust);

f)      393.48(a) (Inoperative/defective brakes: Trailer: Right side axle number 1 brake is defective. Brake drum is rusted.)

123.    As a direct and proximate result of the negligence, gross negligence, carelessness, recklessness, willfulness and wantonness of Defendant Payne, as is set forth more fully herein, Plaintiff has suffered severe injuries and death, has endured, pain and suffering, suffered mentally and emotionally, and has incurred, various medical expenses.

124.    Defendant Payne is liable for all damages allowed by law for the injuries, damages, and losses sustained by the Plaintiff.

## COUNT SEVEN - PUNITIVE DAMAGES AGAINST DEFENDANT NICHOLAS BURIST

125.    Plaintiff incorporates herein by reference all of the allegations of the previous paragraphs, of this Complaint.

126.    Defendant Driver is guilty of such willful misconduct, malice, wantonness, oppression, and an entire want of care sufficient to raise to the presumption of conscious indifference to consequences.

127.    Defendant Driver's misconduct is so aggravating it authorizes, warrants, and demands the imposition of substantial punitive damages against Defendant Driver pursuant to O.C.G.A. § 51-12-5.1.

27

128.    Defendant Driver took deliberate actions in choosing to violate Federal Motor Carrier Safety Regulations, State trucking safety regulations, trucking industry standards, and Georgia law by operating a commercial vehicle under the influence of drugs and alcohol, driving recklessly and grossly negligently, and in other ways that shall be proven at the trial of this matter.

### COUNT EIGHT - PUNITIVE DAMAGES AGAINST DEFENDANTS MAYFLOWER, LOCKE, AND PAYNE

129.    Plaintiff incorporates herein by reference all of the allegations of the previous paragraphs of this Complaint.

130.    Defendant Locke, Defendant Mayflower, and Defendant Payne have been guilty of such willful misconduct, malice, wantonness, oppression, and an entire want of care sufficient to raise to the presumption of conscious indifference to consequences.

131.    Defendants' misconduct is so aggravating it authorizes, warrants, and demands the imposition of substantial punitive damages against Defendant Locke, Defendant Mayflower and Defendant Payne pursuant to O.C.G.A. § 51- 12-5.1.

132.    Defendants took deliberate actions in choosing to violate Federal Motor Carrier Safety Regulations, State trucking safety regulations, trucking industry standards, and Georgia law in a number of ways as articulated herein, including but not limited to by allowing their agent and/or employee to operate a commercial motor vehicle under the influence of drugs and alcohol.

133.    Defendant Mayflower knew or should have known that Defendant Locke

was unfit and/or unskilled in the shipping and transportation of goods, and chose to not properly or reasonably oversee, orchestrate, and/or supervise this operation.

## COUNT NINE - LIABILITY OF NATIONAL INDEMNITY COMPANY

134.   Plaintiff incorporates by herein by reference all of the allegations of the previous paragraphs of this Complaint.

135.   Defendants Mayflower and Locke are motor carriers under both Federal and Georgia law.

136.   At all times relevant to this Complaint, Defendant National Indemnity was the insurance provider for Defendant Locke.

137.   At all times relevant to this Complaint, Defendant National Indemnity was the insurance provider for Defendant Mayflower.

138.   As the insurance provider for Defendants Locke and Mayflower, Plaintiff may bring a direct action against Defendant National Indemnity for damages sustained in the wreck giving rise to this Complaint.

139.   Plaintiff is entitled to recover from Defendant National Indemnity for the negligence of Defendants Mayflower and Locke, and their employee/agent.

140.   Plaintiff has a cause of action against Defendant National Indemnity and is entitled to recover for their damages.

## COUNT TEN – LIABILITY OF XYZ COMPANIES 1-3

141.   Plaintiff incorporates herein by reference all of the allegations of the previous paragraphs of this Complaint.

142.   Upon information and belief, Defendants Mayflower and Locke, have

one or more additional policies of excess insurance that may be with carriers other than Defendant National Indemnity, named herein under Georgia's Direct Action Statute.

143.   Any such insurance providers have responsibility for the actions and inactions of Defendants and are sued under the same cause of action as Defendant National Indemnity.

144.   As the insurance provider for Defendant Mayflower and Defendant Locke, Plaintiffs may bring a direct action against one or more of the entities herein identified as XYZ Companies 1-3 for damages sustained in the wreck giving rise to this Complaint.

145.   Plaintiff is entitled to recover from XYZ Companies 1-3 for the negligence of Defendants Mayflower, Locke, and their employee/agent.

146.   Plaintiff has a cause of action against Defendant XYZ Companies 1-3 and is entitled to recover for their damages.

## **DAMAGES**

147.   Plaintiff incorporates herein by reference all of the allegations of the previous paragraphs of the Complaint.

148.   Defendants directly and proximately caused Plaintiff's injuries through one or more of the negligent acts or omissions stated above. Therefore, Defendants are directly and/or vicariously liable for the Plaintiff's injuries that resulted from this wreck.

149.    That as a direct and proximate result of the negligence, gross negligence, carelessness, recklessness, willfulness and wantonness of Defendants, as is set forth more fully above, Plaintiff was injured, resulting in decedent's violent death, has endured pain and suffering, has suffered mentally and emotionally, and have incurred, and has otherwise been damaged and injured.

150.    Plaintiff is entitled to judgment against Defendants for actual, compensatory, and exemplary or punitive damages for personal injuries set forth herein in an amount that is fair, just, and reasonable, plus whatever costs, interest, and attorneys' fees under O.C.G.A. § 13- 6-11 that plaintiff may be entitled as determined by a jury.

**COUNT ELEVEN– ESTATE CLAIMS OF MICHAEL ANTHONY HINES, JR.**

151.    Plaintiff Makayla Jania Hines is the duly appointed Personal Representative of the Estate of Michael Anthony Hines, Jr., under the laws of Florida and is therefore the proper party to bring this action to recover for damages on behalf of his estate.

152.    Michael Anthony Hines Jr.'s conscious awareness of the impending collision and of his injuries and impending death constitute damages recoverable by his estate and for which recover is sought herein.

153.    The estate is further entitled to recover funeral and burial expenses on behalf of Michael Anthony Hines, Jr.

**COUNT TWELVE – WRONGFUL DEATH OF
MICHAEL ANTHONY HINES, JR.**

154.    Plaintiff incorporates herein by reference all of the allegations of the

previous paragraphs of the Complaint.

155.   Plaintiff, Makayla Jania Hines is the surviving daughter of Michael Anthony Hines, Jr., and the proper party to being the claim for his wrongful death.

156.   At the time of his death, Michael Anthony Hines, Jr. was 36 years old.

157.   Plaintiff Makayla Jania Hines is entitled to recover pecuniary damages arising from the death of Michael Anthony Hines, Jr.

158.   Plaintiff Makayla Jania Hines is entitled to recover damages for the full value of Michael Anthony Hines Jr's life, without deducting for any of the necessary or personal expenses he would have incurred had he lived, for Michael Anthony Hines, Jr's wrongful death caused by Defendants' wrongful acts and/or omissions.

WHEREFORE, PLAINTIFF demands and pray as follows:

a)   That process be issued and service be had upon Defendants as provided by law;

b)   For a trial by a jury comprised of twelve (12) persons as to all issues so triable;

c)   For judgment in favor of Plaintiff and against Defendants;

d)   That Plaintiff, Makalya Jania Hines as the Personal Representative of the estate of Michael Anthony Hines, Jr. to recover all damages for all losses compensable under Georgia law as set forth above;

e)   Plaintiff Makayla Jania Hines, as surviving daughter of Decedent is entitled to recover compensatory damages for the wrongful death of Decedent, the measure of which under Georgia law is the full value of his life, both economic and intangible, as determined by the enlightened conscience of a fair and impartial jury.

f)   That the Court award punitive damages against Defendants;

g)   That all expenses and costs of litigation, including attorney's

fees be cast against the Defendants; and

h)  For such other and further relief as the Court deems just and proper.

This 1st day of August, 2023.


/s/ Andrew Norden
**ANDREW NORDEN, ESQ.**
Florida Bar No.: 808121
**AMI ROMANELLI, ESQ.**
Florida Bar No.: 58258
**OSBORNE & FRANCIS, PLLC**
925 S. Federal Hwy., Ste. 175
Boca Raton, FL 33432
Attorneys for Plaintiff
Telephone: (561) 293-2600
Facsimile:  (561) 923-8100
Primary:    anorden@realtoughlawyers.com
Secondary:  aromanelli@realtoughlawyers.com
                asmart@realtoughlawyers.com
*Pro Hac Vice to be submitted*


/s/ Nathaniel K. Hofman
NATHANIEL K. HOFMAN, ESQ.
Georgia Bar No. 997966
STEWART MILLER SIMMONS TRIAL ATTORNEYS
55 Ivan Allen Jr. Blvd., Suite 700
Atlanta, Georgia 30308
Attorneys for Plaintiff
Telephone: (404) 529-3476
Facsimile: (470) 239-8215
nhofman@smstrial.com

33