# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

KYLE SLOAN, Individually, and
as Personal Representative of
the Estates of Rylie Sloan and
Jamie Sloan; KYLE SLOAN as
Surviving Spouse of Jamie
Sloan; KYLE SLOAN as Surviving
Parent of Rylie Sloan; SUSAN
WEST, Individually and as the
next friend and natural
guardian of K.W., a minor,

    Plaintiffs,

    v.

NICHOLAS BURIST; MAYFLOWER
TRANSIT LLC; JOE MOHOLLAND,
INC.; LOCKE RELATIONS LLC;
ALLSTATE FIRE AND CASUALTY
INSURANCE COMPANY; AND XYZ
COMPANIES 1-3,

    Defendants.

2:22-CV-76

THELMA PETNO,

    Plaintiffs,

    v.

NICHOLAS BURIST; LOCKE
RELATIONS LLC; MAYFLOWER
TRANSIT LLC; JOE MOHOLLAND,
INC.; PAYNE, INC.; AND XYZ
COMPANIES 1-3,

    Defendants.

2:23-CV-31

RAYMOND E. TIPTON,

    Plaintiffs,

    v.

NICHOLAS BURIST; LOCKE
RELOCATIONS LLC; MAYFLOWER
TRANSIT LLC; JOE MOHOLLAND,
INC.; PAYNE, INC.; AND XYZ
COMPANIES 1-3,

    Defendants.

2:23-CV-33

MAKAYLA JANIA HINES,
Individually and as Personal
Representative of the Estate of
Michael Anthony Hines, Jr.,
Deceased,

    Plaintiff,

    v.

NICHOLAS BURIST; LOCKE
RELOCATIONS LLC; NATIONAL
INDEMNITY COMPANY; MAYFLOWER
TRANSIT LLC; PAYNE, INC.; AND
XYZ COMPANIES 1-3,

    Defendants.

2:23-CV-89

## ORDER

Before the Court is Defendant Mayflower Transit LLC's (hereinafter "Mayflower") motions to dismiss for lack of personal jurisdiction filed in the four above-styled actions. See Sloan, 2:22-cv-76, Dkt. No. 108; Petno, 2:23-cv-31, Dkt. Nos. 44, 49; Tipton, 2:23-cv-33, Dkt. Nos. 23, 44; Hines, 2:23-cv-89, Dkt. No.

21. Because Mayflower's motions to dismiss are substantively identical and the jurisdictional evidence is the same in each case, the Court addresses all four motions in this Order. After briefing and oral argument, these motions are ripe for review. See generally Sloan, 2:22-cv-76, Dkt. No. 130. For the reasons stated below, the motions are **DENIED**.

## BACKGROUND[1]

These cases arise out of a July 1, 2022 traffic accident on I-95 in Camden County, Georgia, which resulted in multiple deaths and several hospitalizations. Dkt. No. 10 ¶ 57. These four cases were filed against semi-truck driver Nicholas Burist (hereinafter "Defendant Burist") and several other defendants, including Mayflower. Before discussing the facts of the cases, a brief introduction of the parties is in order.

## I.  Defendants

Defendant Burist is a resident of Virginia, and he was an employee/agent of Mayflower, Defendant Locke Relations LLC (hereinafter "Defendant Locke"), and Defendant Joe Moholland, Inc. (hereinafter "Defendant Moholland"). Id. ¶ 12. Mayflower is a foreign, for-profit entity organized and existing under the laws of Missouri. Id. ¶ 14. Mayflower's principal place of business and its registered agent are in Fenton, Missouri. Id. Mayflower

---

[1] Henceforth and unless otherwise noted, citations to the docket will be to the first-filed case, Sloan v. Burist, 2:22-cv-76.

"engage[s] in the business of long haul commercial over-the-road trucking and transportation." Id. ¶ 15. Defendant Moholland is a foreign, for-profit entity organized and existing under the laws of the state of Virginia. Id. ¶ 17. Its principal place of business and registered agent are located in Woodbridge, Virginia. Id. Defendant Locke is a foreign, for-profit entity organized and existing under the laws of the state of Virginia. Id. ¶ 19. Its principal place of business is located in Newport News, Virginia. Id. Defendant Locke is an "authorized for hire intrastate carrier [that] hired [Burist] under the authority of and for the benefit of all Defendants." Id. ¶ 21. Mayflower is the only Defendant moving to dismiss this suit based on lack of personal jurisdiction. See generally id.

## II.  Plaintiffs

### Sloan v. Burist

Plaintiff Kyle Sloan is a resident of Spartanburg County, South Carolina, as were his deceased wife, Jamie Sloan, and daughter, Rylie Sloan. Id. ¶¶ 3-4. Plaintiff Sloan brings suit individually, as the personal representative of the estates of his wife and daughter, as surviving spouse of Jamie Sloan, and as surviving parent of Rylie Sloan. See generally id. Plaintiff Susan West and her minor child, K.W., are citizens of Spartanburg, South Carolina. Id. ¶ 9. Plaintiff West is the "natural mother and guardian of K.W. and is the proper party to bring claims on behalf

4

of her daughter, and individually, for medical expenses, pain and suffering, and all other causes of actions allowed under Georgia law." Id. ¶ 11.

### Petno v. Burist

Plaintiff Thelma Petno is a citizen of Palm Coast, Florida, and she brings suit on behalf of herself for injuries sustained as a result of the incident. Petno, 2:23-cv-31, Dkt. No. 1 ¶ 3.

### Tipton v. Burist

Plaintiff Raymond Tipton is also a citizen of Palm Coast, Florida, and he brings suit on behalf of himself for injuries sustained as a result of the incident. Tipton, 2:23-cv-33, Dkt. No. 1 ¶ 3.

### Hines v. Burist

Plaintiff Makayla Hines is the daughter and duly appointed personal representative of the estate of Michael Anthony Hines, Jr. Hines, 2:23-cv-89, Dkt. No. 1 ¶ 4. Mr. Hines was a resident of Duval County, Florida. Id. ¶ 3.

## III. The Accident

On July 1, 2022, Defendant Burist was driving a tractor trailer[2] southbound on I-95 in Camden County, Georgia. Dkt. No. 10

---

[2] Burist's tractor trailer was operating under Mayflower's DOT number at the time of the accident. Dkt. No. 10 ¶ 16. It is unclear from the complaint who owned the tractor trailer at the time of the accident. See id. ¶ 18 ("Defendant Moholland and/or Mayflower were the direct owner of the tractor trailer that killed Decedents and severely injured Plaintiff."). In response to Mayflower's

¶ 52. Michael Hines was a passenger in the sleeper compartment of the same tractor trailer. <u>Hines</u>, 2:23-cv-89, Dkt. No. 1 ¶ 42. Plaintiff Sloan was driving his Honda Pilot northbound, carrying his wife, his daughter, and Plaintiff West's minor daughter, K.W. Dkt. No. 10 ¶¶ 54-55. Plaintiff Tipton was also traveling northbound in his Nissan. <u>Tipton</u>, 2:23-cv-33, Dkt. No. 1 ¶ 50. Plaintiff Petno was a passenger in Plaintiff Tipton's Nissan. <u>Petno</u>, 2:23-cv-31, Dkt. No. 1 ¶ 50.

Plaintiffs allege Burist "recklessly collid[ed] with other vehicles, left his lane of travel, and began to travel through the center guardrails." Dkt. No. 10 ¶ 53. Upon entering the northbound lane, Burist's tractor trailer struck several vehicles, including Plaintiff Sloan's Honda Pilot and Plaintiff Tipton's Nissan (hereinafter "the Accident"). <u>Id.</u> ¶ 55. As a result of the Accident, Plaintiff Sloan's wife and daughter, as well as Michael Hines, died. <u>Id.</u> ¶ 56; <u>Hines</u>, 2:23-cv-89, Dkt. No.1 ¶ 44. Plaintiffs allege the Accident also caused injuries and emotional distress to Plaintiff Sloan, Plaintiff Tipton, Plaintiff Petno, Plaintiff West, and West's minor daughter, K.W. Dkt. No. 10 ¶ 56; <u>Petno</u>, 2:23-cv-31, Dkt. No. 1 ¶ 68; <u>Tipton</u>, 2:23-cv-33, Dkt. No.

---

motion to dismiss, however, Plaintiffs submitted a lease agreement purporting to show that Mayflower was both operating and leasing the tractor trailer from Defendant Moholland at the time of the incident. <u>See generally</u> Dkt. No. 112-1. Which of the Defendants is ultimately responsible for the shipment is contested by the parties and is discussed in detail below. <u>See</u> <u>infra</u> Discussion, Part II.

1 ¶ 68. All Plaintiffs allege that Defendant Burist was operating the tractor trailer negligently per se because he was cited for violating several Georgia traffic laws. See Dkt. No. 10 ¶¶ 60-62. Moreover, Plaintiffs allege that Defendants are liable for negligence because they failed to maintain and repair the tractor trailer, which Plaintiffs allege suffered from several deficiencies. See id. ¶¶ 64-65. Plaintiffs argue the Accident was caused by Burist's negligence while driving, the other Defendants' negligence in hiring Burist as a driver, and all Defendants' failure to maintain the tractor trailer. Id. ¶¶ 53, 63, 64.

## IV.   Procedural Background

Mayflower initially moved to dismiss for lack of personal jurisdiction on October 14, 2022. See generally Dkt. No. 26. In response, Plaintiff Sloan moved for limited jurisdictional discovery. See Dkt. No. 68. At the hearing on the initial motion to dismiss and Plaintiff Sloan's motion for limited jurisdictional discovery, the parties and the Court agreed that, in the interest of judicial economy, the motion to dismiss should be dismissed without prejudice until the Supreme Court issued its decision in Mallory v. Norfolk Southern Railway, 143 S. Ct. 2028 (2023) (addressing whether Pennsylvania's consent statute requiring out-of-state corporations to consent to personal jurisdiction in Pennsylvania's courts as condition of registering to do business there violates the Due Process Clause). See generally Dkt. No. 75.

Too, the Court granted Plaintiff Sloan's motion for limited jurisdictional discovery. Dkt. No. 74. Upon the Supreme Court's issuance of <u>Mallory</u>, 143 S. Ct. at 2028 (finding that the consent statute did not violate the Due Process Clause), and the conclusion of the jurisdictional discovery period, Mayflower filed an amended motion to dismiss for lack of jurisdiction in three of the cases, <u>see</u> dkt. no. 108; <u>Petno</u>, 2:23-cv-31, dkt. no. 49; <u>Tipton</u>, 2:23-cv-33, dkt. no. 44, and its first motion to dismiss in <u>Hines</u>, 2:23-cv-89, dkt. no. 21. On October 19, 2022, the Court heard argument on Mayflower's motion. <u>See</u> Dkt. No. 130.

## STANDARD OF REVIEW

"A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." <u>United Techs. Corp. v. Mazer</u>, 556 F.3d 1260, 1274 (11th Cir. 2009). "Where, as here, the defendant challenges jurisdiction by submitting affidavit evidence in support of its position, 'the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction.'" <u>Id.</u> (quoting <u>Meier v. Sun Int'l Hotels, Ltd.</u>, 288 F.3d 1264, 1269 (11th Cir. 2002)). In such cases, "the district court is permitted to consider facts outside the complaint in resolving a motion to dismiss for lack of personal jurisdiction." <u>Prunty v. Arnold & Itkin LLP</u>, 753 F. App'x 731, 734 (11th Cir. 2018). "Where the plaintiff's complaint and

supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff." <u>Meier</u>, 288 F.3d at 1269.

## DISCUSSION

In its pending motion to dismiss, Defendant Mayflower renews its challenge to personal jurisdiction on the basis of both general and specific jurisdiction. <u>See generally</u> Dkt. No. 108. Regarding general jurisdiction, Defendant Mayflower argues that Georgia's consent-by-registration statute,[3] O.C.G.A. § 14-2-1501(a), is unconstitutional because it violates the Dormant Commerce Clause in two ways: (1) by discriminating against out-of-state residents and (2) by creating an undue burden on interstate commerce. Dkt. No. 108 at 16–23. As to specific jurisdiction, Defendant Mayflower argues this Court cannot exercise specific jurisdiction over it because Plaintiffs have not sufficiently pled jurisdiction under Georgia's Long-Arm statute and Defendant Mayflower lacks sufficient minimum contacts with Georgia regarding Plaintiffs' claims. <u>Id.</u> at 23–26.

---

[3] The terms "consent-by-registration" and "jurisdiction-by-registration" are often used interchangeably to identify statutes like Georgia's. In essence, these statutes require that, in order to conduct business within a state, a foreign corporation must register with the state and establish a foreign office for service. By doing so, the foreign corporation will enjoy the same rights and privileges as a domestic entity, but it will also be bound to the same liabilities and restrictions—including consenting to the general personal jurisdiction of the state's courts.

Mayflower's arguments fail as to both general and specific jurisdiction. First, Georgia's consent-by-registration statute is constitutional under both federal and Georgia law, and because Mayflower is registered to do business in Georgia, this Court can exercise general jurisdiction over Mayflower. Second, at this point in the proceedings, Plaintiffs have submitted sufficient evidence to show that Mayflower is subject to specific jurisdiction in Georgia.

## I.    General Jurisdiction

Consent-by-registration statutes, like Georgia's, are generally constitutional under the Due Process Clause. This proposition was recently reaffirmed by the Supreme Court in Mallory v. Norfolk Southern Railway, 143 S. Ct. 2028 (2023). Thus, Mayflower seeks instead to invalidate Georgia's consent-by-registration statute under the Dormant Commerce Clause. See Dkt. No. 108 at 9–14. This argument fails. Mayflower is licensed to transact business in Georgia and thereby consents to jurisdiction in the state. Because of this, subjecting Mayflower to general jurisdiction in Georgia does not place an undue burden on interstate commerce under the Supreme Court's Dormant Commerce Clause precedent. Before exploring the veracity of Defendant Mayflower's Dormant Commerce Clause argument, however, a discussion of Mallory is in order.

**A. Georgia's consent-by-registration statute is constitutional.**

In _Mallory_, the Supreme Court analyzed whether Pennsylvania's consent-by-registration statutes, 15 Pa. Cons. Stat. § 411, 42 Pa. Cons. Stat. § 5301(a)(2)(i), were constitutional under the Due Process Clause of the Fourteenth Amendment. 143 S. Ct. at 2032. The Court, relying on its previous holding in _Pennsylvania Fire Insurance Co. of Philadelphia v. Gold Issue Mining & Milling Co._, 243 U.S. 93 (1917),[4] found that it had already resolved consent-by-registration statutes as constitutional. 143 S. Ct. at 2037-38. This was the extent of the majority's decision, as the other relevant portions of Justice Gorsuch's plurality opinion garnered the support of only four Justices. At bottom, _Pennsylvania Fire_ remains good law, and consent-by-registration statutes are generally constitutional.

Georgia's consent-by-registration statute is almost identical to Pennsylvania's. The main difference is Pennsylvania's statute explicitly provides that corporations registered to do business in the state will be subject to general jurisdiction, whereas the Georgia statute does so only implicitly. _Compare_ 42 Pa. Cons. Stat.

---

[4] In _Pennsylvania Fire_, the Court determined that a Missouri consent-by-registration statute was constitutional under the Due Process Clause. _Penn. Fire_, 243 U.S. at 96. Specifically, the Court found that a corporation that had completed the "voluntary act" of registering within Missouri had "consented" to jurisdiction and "take[n] the risk of the interpretation that may be put upon it by the courts." _Id._

§ 5301 <u>with</u> O.C.G.A. § 14-2-1501(a); <u>see also</u> <u>Cooper Tire & Rubber</u> <u>Co. v. McCall</u>, 863 S.E.2d 81, 90 (Ga. 2021) ("Georgia's Business Corporation Code does not expressly notify out-of-state corporations that obtaining authorization to transact business in this State . . . subjects them to general jurisdiction in our courts," but the Court's previous holdings *do* "notify out-of-state corporations that their corporate registration will be treated as consent to general personal jurisdiction in Georgia."); <u>Allstate</u> <u>Ins. Co. v. Klein</u>, 422 S.E.2d 863, 865 (Ga. 1992) ("[A] corporation which is authorized to do or transact business in this state at the time a claim arises is a resident for purposes of personal jurisdiction over that corporation in an action filed in the courts of this state." (internal quotations omitted)). Thus, like the Pennsylvania statutes at issue in <u>Mallory</u>, Georgia's consent-by-registration statute is constitutional under the Due Process Clause.

The Georgia Supreme Court reaffirmed this understanding in <u>Cooper Tire</u>. There, the court upheld its decision in <u>Klein</u> and found that "Georgia courts may exercise general personal jurisdiction over any out-of-state corporation that is 'authorized to do or transact business in this state at the time a claim or cause of action arises.'" <u>Cooper Tire</u>, 863 S.E.2d at 83 (quoting <u>Klein</u>, 422 S.E.2d at 865). <u>Cooper Tire</u> was decided before <u>Mallory</u>, but the Georgia Supreme Court, like the United States Supreme

Court, relied on <u>Pennsylvania Fire</u> to uphold Georgia's consent-by-registration statute, finding that "[u]nless and until the United States Supreme Court overrules <u>Pennsylvania Fire</u>, that federal due process precedent remains binding on this Court and lower federal courts." <u>Id.</u> at 90. As previously discussed, the United States Supreme Court has not overruled <u>Pennsylvania Fire</u>, so the Georgia Supreme Court's holding that Georgia's consent-by-registration statute is constitutional under the Due Process Clause remains good law. This background points to one conclusion: under both federal and Georgia state law, Georgia's consent-by-registration statute is constitutional.

**B. Subjecting Mayflower to general jurisdiction does not violate the Dormant Commerce Clause.**

Mayflower argues the Dormant Commerce Clause—rather than the Due Process Clause—invalidates Georgia's consent-by-registration statute. To make its argument, Mayflower relies heavily on Justice Alito's concurrence in <u>Mallory</u>. <u>See</u> Dkt. No. 108 at 9–14. Mayflower's argument is unavailing for two reasons. First, Justice Alito's concurrence is not controlling authority, and therefore, <u>Pennsylvania Fire</u> controls this case. <u>See, e.g.,</u> <u>Maryland v. Wilson</u>, 519 U.S. 408, 412–13 (1997) (Language "contained in a concurrence" does not "constitute[] binding precedent."). Second, Mayflower's challenge fails under the Supreme Court's binding Dormant Commerce Clause precedent.

13

Justice Alito joined the _Mallory_ majority with respect to two parts of the opinion—including the part finding the statute constitutional under the Due Process Clause. But he also wrote separately to express his opinion on the Pennsylvania statute's constitutionality under the Dormant Commerce Clause. See _id._ at 2051 (Alito, J., concurring) ("The federalism concerns that this case presents fall more naturally within the scope of the Commerce Clause."). Specifically, Justice Alito wrote that, in his view, "there is a good prospect that Pennsylvania's assertion of jurisdiction . . . over an out-of-state company in a suit brought by an out-of-state plaintiff on claims _wholly unrelated to Pennsylvania_ . . . violates the Commerce Clause." _Id._ at 2053 (emphasis added). "Under [the Court's] modern framework, a state law may offend the Commerce Clause's negative restrictions in two circumstances: when the law discriminates against interstate commerce or when it imposes undue burdens on interstate commerce." _Id._ (internal quotations omitted). In applying this framework to the Pennsylvania statute, Justice Alito found that, while "[t]here is reason to believe that [the statute] discriminates against out-of-state companies," the law _does_ impose "a 'significant burden' on interstate commerce by '[r]equiring a foreign corporation . . . to defend itself with reference to all transactions,' including those with no forum connection." _Id._ (quoting _Bendix Autolite Corp. v. Midwesco Enters., Inc.,_ 486 U.S. 888, 893 (1988)). Justice Alito

14

then applied Commerce Clause scrutiny under the Court's framework and was "hard-pressed to identify any legitimate local interest that is advanced by requiring an out-of-state company to defend a suit brought by an out-of-state plaintiff on claims wholly unconnected to the forum State." Id. Thus, if a challenge to the statute had been brought under the Commerce Clause, Justice Alito would have found the statute unconstitutional. But because Pennsylvania Fire resolved the case, Justice Alito agreed that the statute was constitutional under the Due Process Clause. Id. at 2055. Even if Justice Alito's opinion was binding authority, it is not clear that Georgia's consent-by-registration statute would be unconstitutional under his Dormant Commerce Clause analysis because the Accident is not "wholly unconnected to the forum State," Georgia. Id. at 2053.

The same is true under other Supreme Court decisions finding personal jurisdiction over a foreign corporation violated the Dormant Commerce Clause. See, e.g., Atchison, T. & S. F. R. Co. v. Wells, 265 U.S. 101, 103 (1924) (finding a Texas court maintaining personal jurisdiction over a Kansas corporation would violate the Dormant Commerce Clause because the Kansas corporation "had not been admitted to Texas as a foreign corporation;" "had not consented to be sued there;" "did not . . . operate . . . in Texas;" and, "had no agent there"); Michigan C. R. Co. v. Mix, 278 U.S. 492, 492 (1929) ("A railroad company engaged in interstate

commerce cannot be subjected to an action in a state court entailing a burden upon or an obstruction of its interstate commerce . . . without its consent in a State where the cause of action did not arise and where the company has no railroad and where it has not been admitted to do business."); <u>Davis v. Farmers Co-Op. Equity Co.</u>, 262 U.S. 312 (1923). None of these cases are instructive here. Unlike in <u>Atchison</u> and <u>Mix</u>, Mayflower had registered to do business in Georgia and had consented to jurisdiction accordingly. Too, <u>Davis</u> does not govern the present case. The Supreme Court's holding there was a narrow one: "[O]rderly, effective administration of justice clearly does not require that a foreign carrier shall submit to a suit in a State in which the cause of action did not arise, in which the transaction giving rise to it was not entered upon . . . and in which the plaintiff does not reside." <u>Id.</u> at 317. Here, however, the cause of action *did* arise in Georgia, as the accident occurred on I-95 in Camden County.[5] In short, these cases do not support Mayflower's argument that the Dormant Commerce Clause invalidates Georgia's consent-by-registration statute.

Indeed, a similar case also proffered by Mayflower supports a finding that the Dormant Commerce Clause does *not* apply in a

---

[5] Moreover, while <u>Davis</u> seemingly remains good law, it was decided in 1923, and the Court has "since refined [its] Commerce Clause framework." <u>Mallory</u>, 143 S. Ct. at 2053 (Alito, J., concurring).

case such as this. In Denver & R. G. W. R. Co. v. Terte, the
Supreme Court reviewed a case involving two different foreign
railroad corporations being sued in Missouri. 284 U.S. 284, 285
(1932). Rio Grande, a Delaware corporation, operated wholly within
Colorado, Utah, and New Mexico, and was "not licensed to do
business in Missouri." Id. at 286. Santa Fe, on the other hand,
was a Kansas corporation that operated railroad lines in Missouri,
Kansas, Colorado, and other states. Id. Santa Fe *was* "licensed to
do business in Missouri and had an office and agents" within the
state. Id. Both corporations challenged jurisdiction in Missouri
based on the Dormant Commerce Clause. Id. at 285. The Court
determined that jurisdiction over Rio Grande would violate the
Dormant Commerce Clause because it had not consented to suit within
the state and did not transact business there. Id. at 287. But the
Court found that Santa Fe could be subject to jurisdiction in
Missouri because it was authorized to do business there and did in
fact transact business within the state. Id. The noted distinction
between these two corporations explains exactly why the Dormant
Commerce Clause does not bar jurisdiction over Mayflower in this
case. Like Santa Fe, Mayflower is licensed to business in Georgia
and transacts business within the state. Thus, under Terte,
jurisdiction over Mayflower is constitutional.

　　　Georgia's consent-by-registration statute is constitutional
under the Due Process Clause. See Mayflower, 143 S. Ct. at 2037–

38. Moreover, jurisdiction over Mayflower does not offend the Dormant Commerce Clause because Mayflower is registered to do business in Georgia, the Accident occurred in Georgia, and Mayflower has consented to personal jurisdiction in Georgia. Thus, Mayflower is subject to general personal jurisdiction in this state.

## II.  Specific Jurisdiction

Although a determination that Mayflower is subject to general personal jurisdiction in Georgia is dispositive of Mayflower's motion to dismiss, it is worthwhile to analyze Mayflower's argument regarding specific jurisdiction as well.

Mayflower argues that it cannot be subject to specific jurisdiction in this Court because it is not subject to jurisdiction under Georgia's long-arm statute and the Accident is not related to Mayflower's contacts with Georgia. The Court finds both arguments unavailing.

Specific jurisdiction requires a two-part analysis. First, the Court must "consider the jurisdictional question under the state long-arm statute." Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990) (citing Cable/Home Comm. Corp. v. Network Prods., 902 F.2d 829, 855 (11th Cir. 1990)). Georgia's long-arm statute, in relevant part, confers jurisdiction over a nonresident if he, or one of his agents, "[c]ommits a tortious act or omission within this State." O.C.G.A. § 9-10-91(2). "Georgia's long-arm statute

permits jurisdiction where a plaintiff's cause of action 'arises out of' a nonresident defendant's 'transact[ion] of any business within [Georgia].'" Diamond Crystal Brands, 593 F.3d at 1264 (quoting O.C.G.A. § 9-10-91(1)). In other words, jurisdiction under Georgia's long-arm statute requires the Plaintiffs to show that their cause of action arose out of Mayflower's business transactions within Georgia.

The second part of a specific jurisdictional analysis is a Due Process inquiry, and the Court must "determine whether sufficient minimum contacts exist to satisfy the Due Process Clause of the Fourteenth Amendment so that 'maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" Id. (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). While this inquiry is multi-faceted, Mayflower challenges specific jurisdiction under only one requirement of a Due Process inquiry: whether Mayflower maintains "constitutionally sufficient 'minimum contacts' with Georgia regarding Plaintiffs' claims." Dkt. No. 108 at 25.

"In order for a court to exercise specific jurisdiction over a claim, there must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State.'" Bristol-Myers Squibb Co. v. Superior Court, 582 U.S. 255, 264 (2017) (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919

19

(2011)). "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." Id.; see also Goodyear, 564 U.S. at 931 n.6 ("[E]ven regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales."). In other words, constitutional limitations on specific jurisdiction require Plaintiffs to show that their cause of action arose out of Mayflower's contacts with Georgia.

To be clear, each part of the specific jurisdiction analysis requires some level of independent analysis because "the Georgia long-arm statute does not grant courts in Georgia personal jurisdiction that is coextensive with procedural due process." Diamond Crystal Brands, Inc. v. Food Movers Int'l, 593 F.3d 1249, 1259 (11th Cir. 2010) (citing Innovative Clinical & Consulting Servs., LLC v. First Nat'l Bank of Ames, Iowa, 620 S.E.2d 352 (Ga. 2005)). Indeed, Georgia's long-arm statute "imposes independent obligations that a plaintiff must establish for the exercise of personal jurisdiction that are distinct from the demands of procedural due process." Id. But in this case, Mayflower's challenge to specific jurisdiction presents only the question of whether Mayflower's contacts within Georgia gave rise to this cause of action.[6] The answer to that question will resolve both of

---

[6] Mayflower independently argues that "Plaintiffs in these related cases have not ple[d] any subsection of Georgia's long-arm statute

Mayflower's arguments against specific jurisdiction. The two analyses are inextricably linked, the same evidence is submitted for both, and time and space are better served reviewing them together.

Mayflower argues that "it would be impossible for [Plaintiffs] to satisfy [the] relatedness requirement because Mayflower has no pertinent connection to the subject July 1, 2022 motor-vehicle accident." Dkt. No. 108 at 23–24. In response, Plaintiffs advance several related arguments tending to show that the cause of action does arise out of Mayflower's contacts with Georgia. See Dkt. No. 112 at 2–22; Petno, 2:23-cv-31, Dkt. No. 50 at 8–20; Tipton, 2:23-cv-33, Dkt. No. 45 at 8–20. Essentially, Plaintiffs' arguments are: Mayflower's lease of the tractor trailer is a sufficient contact that is related to the cause of action; Defendant Joe Moholland, Inc., was an agent of Mayflower, and its partial responsibility for the accident should be imputed to Mayflower; and Defendant Burist was an employee/agent of Mayflower, and his actions should be imputed to Mayflower. The Court finds that, at this stage in the proceedings, Plaintiffs

---

regarding Mayflower." Dkt. No. 108 at 23. Mayflower is correct in this regard. See generally Dkt. No. 10. But Plaintiffs are not required to plead a specific subsection of the long-arm statute in their complaint. See Mazer, 556 F.3d at 1274 ("A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction."). Therefore, Mayflower's argument is without merit.

have submitted sufficient evidence to show that Defendant Moholland was an agent of Mayflower at the time of the accident, and thus, Mayflower's contacts through Defendant Moholland give rise to this cause of action.

The presence of an agency relationship between Mayflower and Defendant Moholland is dispositive in this case because an agent's contacts with a state can be imputed to a principal for purposes of specific jurisdiction under Georgia's long-arm statute and the Due Process Clause. Georgia's long-arm statute provides that a Georgia court may exercise personal jurisdiction over a defendant "if in person or *through an agent*, he . . . [c]ommits a tortious act or omission within this state." O.C.G.A. § 9-10-91 (emphasis added). Too, an agent's contacts can be imputed to a principal under a Due Process analysis. See Daimler AG v. Bauman, 571 U.S. 117, 135 n.13 (2014) ("Agency relationships . . . may be relevant to the existence of specific jurisdiction."); International Shoe Co. v. Washington, 326 U.S. 310, 318 (1945) ("[A]lthough the commission of some single or occasional acts of the corporate agent in a state sufficient to impose an obligation or liability on the corporation has not been thought to confer upon the state authority to enforce it . . . other such acts, because of their nature and quality and the circumstances of their commission, may be deemed sufficient to render the corporation liable to suit." (citations omitted)); see also Products Promotions, Inc. v. Cousteau, 495

F.2d 483, 492 (5th Cir. 1974) ("[A]n agency relationship may justify finding that a parent corporation 'does business' in a jurisdiction through its subsidiary's local activities."). As a result of jurisdictional discovery, Plaintiffs submit the following evidence showing the existence of an agency relationship between Mayflower and Defendant Moholland.

First, Plaintiffs submit an agency agreement between Mayflower and Defendant Moholland (hereinafter "Agency Agreement"). See Dkt. No. 112-14. Mayflower claims that the Agency Agreement ended before the Accident, arguing that "[Defendant] Moholland . . . and Mayflower agree that no relationship existed between them on July 1, 2022." Dkt. No. 119 at 18. In so doing, Mayflower relies on the testimony of Robb Garr, a corporate representative of Defendant Moholland, stating that "Mayflower ha[d no] involvement in th[e] July 1st, 2022, accident or the shipments on the truck." Id. But Mayflower does not provide any physical documentation to show that the Agency Agreement terminated prior to the Accident. At this point in the proceedings, the Court finds that Plaintiffs have met their burden in showing an express agency relationship between Mayflower and Defendant Moholland. See Meier, 288 F.3d at 1269 ("Where the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff.").

Even if the Agency Agreement did end before the Accident, the Court also finds that Plaintiffs have submitted sufficient evidence to show the existence of an implied agency relationship. See, e.g., Burgess v. Religious Tech. Ctr., Inc., 600 F. App'x 657, 661 (11th Cir. 2015) ("Absent express authority, the court may look to whether agency is implied by the circumstances." (citing NAACP v. Overstreet, 142 S.E.2d 816, 826 (Ga. 1965))). To that end, Plaintiffs submit financial statements reflecting the existence of an agency relationship at the time of the Accident. See Dkt. No. 112-8. Specifically, Plaintiffs submit the following financial statements[7] as evidence of Mayflower's association with the Accident: (1) an agency statement for the period ending July 6, 2022, showing Mayflower made an insurance payment for Defendant Burist, id. at 19; (2) an agency statement for the period ending July 6, 2022, showing an "Agent Payment" in the amount of $20,000, id. at 18; and (3) an agency statement for the period ending August 3, 2022, showing the same "Agency Payment" in the amount of $20,000, id. at 13. Because these payments occurred after the Accident, the Court finds sufficient evidence to show an agency

---

[7] The statements presented are titled "Agency Statement – Mayflower Transit" with the purported agent listed as "M00333 – Joe Moholland Moving." See generally Dkt. No. 112-8. Therefore, the Court assumes that the payments listed are in furtherance of the agency relationship between Mayflower and Defendant Moholland.

relationship existed between Mayflower and Defendant Moholland at the time of the Accident.

Plaintiffs also submit evidence of a lease agreement between Mayflower and Defendant Moholland for the tractor trailer involved in the accident.[8] See Dkt. No. 112-1 ("Equipment Description Addendum and Statement of Lease Certification"). That addendum provides that Mayflower, identified as the "leassor," "is operating this vehicle pursuant to a lease agreement with [Defendant] Moholland." Id. In further support of Mayflower's ownership interest in the tractor trailer, Plaintiffs provide a "Vehicle Inspection Report" for the tractor trailer, which was conducted by Mayflower on February 15, 2022. See Dkt. No. 112-6.

---

[8] Additionally, Plaintiffs argue that the appearance of Mayflower's logo on Defendant Burist's tractor trailer signifies the existence of an agency relationship. See Dkt. No. 112 at 9 ("Mayflower's branding was scattered on various Moholland tractor-trailers many months after the [Accident]."); see also Dkt. No. 112-12 at 2 (affidavit of private investigator finding Mayflower signage on multiple Moholland tractor trailers in March 9, 2023). Mayflower, however, contends that "logo liability" is not sufficient to prove an agency relationship. See Dkt. No. 119 at 15 (citing Knight v. Swift Transp. Co., No. 1:05-CV-1060, 2006 WL 2189700 (N.D. Ga. July 31, 2006)). Mayflower is correct that the appearance of a company's logo on a truck alone does not signify an agency relationship or ownership of the vehicle. See, e.g., Southern R. Co. v. Hullender, 8 S.E.2d 674, 676 (Ga. Ct. App. 1940) (finding an agency relationship could not be proven where "[t]he only evidence tending to show that the injury was due to the negligence of the defendant's employees was the testimony of the plaintiff to the effect that the engine which struck the car he was unloading had written on it 'Southern Railway Company'"). But, when submitted in conjunction with other relevant evidence, the presence of Mayflower's logo may be useful in determining ownership of the tractor trailer.

In response, Mayflower, relying on deposition testimony, argues that the lease agreement had been terminated prior to the July 1, 2022 accident. See, e.g., Dkt. No. 119 at 10 ("There was no active equipment lease between Moholland and Mayflower on July 1, 2022."); see also id. at 11 (testimony of Jason Jones, Mayflower's corporate representative, stating that the lease agreement "was cancelled . . . on May 18th, 2022"). Plaintiffs, however, argue that "no evidence has been produced showing the equipment lease agreement was ever terminated." Dkt. No. 112 at 5. Additionally, Plaintiffs submit testimony of a Mayflower 30(b)(6) designee, stating that "nothing [was] sent to [Defendant] Moholland terminating the lease." Id. at 6. Construing all reasonable inferences in favor of Plaintiffs, there is sufficient evidence showing the existence of a lease agreement between Mayflower and Defendant Moholland for Defendant Burist's tractor trailer.

Finally, Plaintiffs argue that, even if the agency relationship terminated before the Accident, the "shipment at issue in this case actually commenced during the applicability of the [A]gency Agreement."[9] Id. at 12. In support of that argument,

---

[9] Plaintiffs rely on language from the Agency Agreement itself to show that any shipment commencing before the Agency Agreement terminated would be considered part of the agency relationship between Mayflower and Defendant Moholland. See Dkt. No. 112 at 12 ("Paragraph 5.K(g) of the [A]gency [A]greement states . . . 'As to any shipment that has commenced prior to the date on which this agreement is terminated, the terms, provisions, and conditions of this agreement will continue to apply to such a shipment.'").

Plaintiffs submits deposition testimony of Jason Jones, Mayflower's corporate representative, showing when the shipment at issue commenced. See Dkt. No. 112-3 at 11. In his deposition, Mr. Jones agrees "that the bills of lading reflect that this shipment commenced on March 15th and March 2nd, 2022." Dkt. No. 112-3 at 65. Thus, Plaintiffs argue that the shipment carried by Defendant Burist and involved in the Accident operated under the Agency Agreement, and, thus, Defendant Moholland was an agent of Mayflower for the purposes of that shipment. Mayflower argues that "[t]he bills of lading that Plaintiffs rely on do not mention Mayflower because the underlying move was not a Mayflower move and Mayflower was not paid for the move." Dkt. No. 119 at 19. Mayflower does not provide direct evidence of this contention. Instead, it relies on the testimony of Robb Garr to support its argument. See id. (The "bills of lading [would not] mention Mayflower or list Mayflower's DOT number."). Again, the Court must construe all disputes in favor of Plaintiffs. Accordingly, the Court finds that Plaintiffs have presented enough evidence to show that the shipment involved in the Accident was covered under the Agency Agreement.

At this point in the proceedings, Plaintiffs have met their burden to show that Mayflower's contacts through its agent Defendant Moholland give rise to Plaintiffs' cause of action. Defendant Moholland serviced the shipment that caused the Accident, and its contacts are imputed to Mayflower through an

27

agency relationship. Those contacts give rise to Plaintiffs' causes of action, and this Court may exercise specific jurisdiction over Mayflower under O.C.G.A. § 9-10-91(2) and the Due Process Clause.

## CONCLUSION

The Court may constitutionally exercise both general and specific personal jurisdiction over Defendant Mayflower. Therefore, Mayflower's motions to dismiss in all four related cases are **DENIED**. Sloan v. Burist, 2:22-cv-76, dkt. no. 108; Petno v. Burist, 2:23-cv-31, dkt. nos. 44, 49; Tipton v. Burist, 2:23-cv-33, dkt. nos. 23, 44; and Hines v. Burist, 2:23-cv-89, dkt. no. 21. Further, Mayflower's motions to stay discovery pending resolution of these motions are **DENIED as moot**, Petno v. Burist, 2:23-cv-31, dkt. no. 64; Tipton v. Burist, 2:23-cv-33, dkt. no. 57, as are Plaintiffs' motions to strike, Petno v. Burist, 2:23-cv-31, dkt. no. 58; Tipton v. Burist, 2:23-cv-33, dkt. no. 52.

**SO ORDERED** this 6th day of November, 2023.

_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA