## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF GEORGIA BRUNSWICK DIVISION

### CASE NO.: 2:23-cv-00089-LGW-BWC

MAKAYLA JANIA HINES, individually,
and as Personal Representative of
the Estate of MICHAEL ANTHONY
HINES, JR., Deceased

      Plaintiff,

      v.                                  JURY TRIAL DEMANDED

NICHOLAS BURIST; LOCKE
RELOCATIONS LLC; NATIONAL
INDEMNITY COMPANY;
MAYFLOWER TRANSIT LLC;
PAYNE INC., MOHOLLAND, INC., AND
XYZ COMPANIES 1-3

      Defendants.
_____/

### AMENDED COMPLAINT FOR DAMAGES

COMES NOW MAKAYLA JANIA HINES, individually, and as Personal
Representative of  the Estate of MICHAEL ANTHONY HINES, JR., deceased,
individually, and in each of her representative capacities, and hereby files her
Amended Complaint for Damages, showing this Honorable Court as follows:

### NATURE OF COMPLAINT

1.    This is a civil action for damages against Defendants arising out of a
motor vehicle collision. Plaintiff brings this action to obtain full and complete relief
from defendants.

## PARTIES, JURISDICTION, AND VENUE

2.     The jurisdiction of this Court is invoked pursuant to 29 U.S.C. § 1332, under diversity of citizenship. More than $75,000 is in controversy and Plaintiff and Defendants are citizens of different states for purposes of diversity.

3.     Decedent was a resident and citizen of Duval County, Florida, at the time of his death. The vast majority of the evidence in this action will relate to establishing the value of his life.

4.     Plaintiff Makayla Jania Hines is the duly appointed Personal Representative of the Estate of Michael Anthony Hines, Jr. and is therefore the proper party to bring this action for all damages recoverable by the estate. Makayla Jania Hines was appointed Personal Representative of the estate by the Circuit Court for Duval County, Probate Division. Makayla Jania Hines is the surviving *sui juris* child of the decedent.

5.     Decedent, Michael Anthony Hines, Jr., was a passenger in the semi-tractor trailer driven by Defendant Nicholas Burist.

6.     Defendant Nicholas Burist ("Defendant Driver") is a citizen and resident of Virginia. At all times relevant hereto, Defendant Driver was an employee/agent of Defendant Mayflower Transit LLC ("Defendant Mayflower" or "Mayflower") and Defendant Locke Relocations LLC ("Defendant Locke" or "Locke"). Defendant Driver operated the 2014 ProStar International tractor Vin # 3HSDJAPR7EN491357 with tag number 59AP8M and trailer leased by Defendant Joe Moholland Inc. ("Moholland") from Defendant Payne, Inc. ("Defendant Payne" or "Payne") that killed

the Decedent, a passenger in the tractor-trailer. Defendant Driver can be served with process through the Camden County Sheriff at the Camden County Jail in Georgia.

7.      Defendant Driver is a non-resident motorist who availed himself of the laws and protections of the State of Georgia by operating a commercial motor vehicle in Camden County, Georgia, that was owned and/or leased by Defendants, Moholland, Locke, and/or Mayflower.

8.      Defendant Unigroup is a foreign, for-profit business entity organized and existing under the laws of the state of Missouri.  Its principal place of business is located in Fenton, Missouri. Service may be had upon this defendant at One Premier Drive, Fenton, St. Louis County, Missouri 63026.

9.      Defendant UniGroup, C.A., a Missouri corporation pursuant to Mo. St. Sec. 357.010, and is located on the same campus and at the same location as Mayflower Transit, LLC, Trans Advantage Inc. and 47 other subsidiaries or "paper companies", and it does business under any/all of these entities. UniGroup, C.A. is owned by various "agents" such as Conser Moving and Storage company and Joe Moholland Inc. UniGroup, C.A. is, by virtue of its merger with UniGroup, Inc., is a for-hire motor carrier operating motor vehicles transporting property in interstate commerce and is registered with the Federal Motor Carrier Safety Administration (USDOT number 756209).

10.      UniGroup, C.A. and/or Mayflower Transit provides to their hauler-agents all of the following: "move managers," claims and loss prevention systems, truck   driver   recruiting,   dispatching,   technology,   marketing,   sales   leads,

procurement, purchasing, financing of tractors and trailers, tractor leasing services through its "TransAdvantage" lease program with Penske, training, safety programs, and use of the United Van Lines or Mayflower USDOT operating authority.

11.     Defendant UniGroup is a 1.7-billion-dollar company with at least 50 subsidiaries and more than 290 agents.  It is estimated that UniGroup has over 900 employees.

12.     Several of UniGroup's businesses are self-described "paper companies" that act to shield liability, thwart tax penalties, and maximize profits for only those in a position of power within the company.

13.     Defendant Unigroup provided training and oversight to Defendant Burist and qualified him as a driver.  Further, Defendant UniGroup, through its subsidiaries and agents (including Mayflower and Moholland), cultivated the actions and inactions that lead to the July 1, 2022 collision, that will undoubtedly continue to devastate the Plaintiffs for life.

14.     Defendant Mayflower Transit, LLC's parent company is UniGroup, C.A., which is a Missouri corporation pursuant to Mo. St. Sec. 357.010.  Mayflower is a "Brand" of Defendant UniGroup.

15.     Defendant Mayflower and Defendant Moholland utilize another subsidiary of the UniGroup brand - named Trans Advantage Inc.  Trans Advantage has registered by consent to do business in Georgia, and its registered agent is located at CT Corporation System at 289 S Culver St, Lawrenceville, GA, 30046-4805. Trans Advantage was/is a subsidiary of Mayflower and directly benefited Mayflower

Transit, Joe Moholland and Locke Relocations, through its role in leasing/financing the tractor and/or trailer at issue in the collision.

16.     Defendant Mayflower is a foreign, for-profit business entity organized and existing under the laws of the state of Missouri.  Its principal place of business is located in Fenton, Missouri. Service may be had upon this defendant at One Premier Drive, Fenton, St. Louis County, Missouri 63026 or upon its registered agent, CT Corporation System, located at 289 S. Culver Street, Lawrenceville, GA, 30046-4805.

17.     At all times material herein, Defendant Mayflower engaged in the business of long haul commercial over-the-road trucking and transportation. Additionally, Defendant Mayflower regularly does and solicits business within the state of Georgia. Further, Defendant Mayflower derived substantial revenue from goods used or consumed or services rendered in Georgia.

18.     21.     Defendant Mayflower is registered to do business in Georgia and has several store locations and agents in Georgia. (See Affidavit of James Eskew, Exhibit A).

19.     At all times material herein, Defendant Mayflower was licensed by the U.S. Department of Transportation and was subject to Federal and State laws governing that industry. Defendant Mayflower's DOT number is 125563 and Defendant Driver was operating with this number on his commercial vehicle at the time of this collision.

20.     Defendant Mayflower provided an equipment lease to Defendant Moholland for the tractor and/or the trailer that was being operated at the time of the collision.  The equipment lease for the tractor reads, "[t]he vehicle described below is being operated by Mayflower Transit, LLC ("Mayflower Transit"), DOT #125563, whose principal place of business is One Premier Drive, Fenton, Missouri 63026: 2014 International     Vin # 3HSDJAPR7EN491357 Mayflower Transit (Leassor – Mayflower's spelling) is operating this vehicle pursuant to a lease agreement with Joe Moholland Moving which has a term beginning from the date shown below and continues thereafter until one party provides thirty (30) days written notice of its intention to terminate the lease agreement… Signed on 12/05/2017."   Upon information and belief, the equipment lease agreement was never terminated.

21.     Defendant Mayflower also qualified the tractor in February of 2022 that was driven by Defendant Nicholas Burist, at the time of the collision on July 1, 2022.

22.     Defendant Moholland is a foreign, for-profit business entity organized and existing under the laws of the state of Virginia.  Its principal place of business is in Woodbridge, Virginia. Service may be had upon this defendant at 15481 Farm Creek Drive, Woodbridge, Virginia 22191.

23.     At all times material herein, Defendant Moholland was licensed by the U.S. Department of Transportation and was subject to Federal and State laws governing that industry. Defendant Moholland's DOT number is 486221.

24.     Defendants were lessee/owners/"leassors" (Mayflower's spelling) of the tractor that killed Decedent.

6

25.     Defendant Locke Relocation, LLC is a foreign, for-profit business entity organized and existing under the laws of the state of Virginia. Its principal place of business is located at 1604 Wickham Ave., Newport News, VA, 23607.

26.     At all times material herein, Defendant Locke was licensed by the U.S. Department of Transportation and was subject to Federal and State laws governing that industry. Defendant Locke's DOT number is 2799903.

27.     That, upon information and belief, Defendant Locke is an authorized for hire intrastate carrier who hired Defendant Driver under the authority of and for the benefit of all Defendants.

28.     Locke Relocations' insurance policy lists the tractor, the 2014 International Vin # 3HSDJAPR7EN491357, on its policy and the secured party as "Trans Advantage Inc. and its successors and assigns."  This comports with the control, agency, and contractual agreement between the parties.

29.     Defendant Payne, Inc., is a foreign, for-profit business entity organized and existing under the laws of the state of Virginia. Its principal place of business is in Fredericksburg, Virginia. Service may be had upon this defendant through its registered agent, Daniel Payne, at 10411 Hall Industrial Drive, Fredericksburg, Virginia 22408.

30.     At all times material herein, Defendant Payne was licensed by the U.S. Department of Transportation and was subject to Federal and State laws governing that industry. Defendant Payne's DOT number is 194795. Defendant Payne was the owner of the trailer that was involved in the collision which severely and fatally

injured the Plaintiff.

31.     That, upon information and belief, Defendant Payne is an authorized for hire interstate carrier who leased the trailer, driven by Defendant Driver, to Moholland, and/or Defendant Mayflower.

32.     Defendant National Indemnity Company ("Defendant National Indemnity" or "National Indemnity") covered Defendants Mayflower and Locke, and their employees with a policy of insurance at all times pertinent to this Complaint for Damages and therefore it is subject to the jurisdiction and venue of this Court. Said policy was written for and provided to a motor carrier. This direct action is, therefore, permitted by O.C.G.A. § 40-1-112. Defendant National Indemnity is a foreign insurance company organized and existing under the laws of Nebraska. Defendant National Indemnity may be served through its registered agent, to wit, Andrea Conarro, Esq., Law Office of Andrea Conarro, LLC, 439 South Park Street, Unit A, Dahlonega, GA 30533.

33.     Defendant XYZ Companies Nos. 1-3 are not-yet-identified entities which either owned, operated, placarded, maintained, controlled, insured or were otherwise responsible for the tractor and/or trailer in the motor vehicle collision pertinent to this action and/or employed, were a principal of, or otherwise had an agent/principal relationship with the named Defendants on the date of the wreck at issue, or are otherwise liable for the wreck at issue. Defendants XYZ Companies. Nos. 1-3 will be named and served with Summons and Complaint once their respective identities are revealed.

34.     Defendant Vanliner Insurance Company ("Defendant Vanliner" or "Vanliner") covered Defendants Mayflower, UniGroup, Moholland and Defendant Locke, and/or their employees with a policy of insurance at all times pertinent to this Complaint for Damages and therefore it is subject to the jurisdiction and venue of this Court.  Said policy was written for and provided to a motor carrier.  This direct action is, therefore, permitted by O.C.G.A. § 40-1-112.  Defendant Vanliner is a foreign insurance company organized and existing under the laws of Ohio. Defendant Vanliner may be served through its registered agent, to wit, United Agent Group Inc., 2985 Gordy Parkway, 1st Floor, Marietta, Cobb County, Georgia.

35.     That herein, Defendant Mayflower, Defendant Locke, Defendant UniGroup, Defendant Moholland, Defendant Payne, Defendant Driver, Defendant National Indemnity, Defendant Vanliner, and Defendants XYZ are referred to collectively as the "Defendants."

36.     Pursuant to O.C.G.A. § 14-2-504 Defendant Mayflower, Defendant Locke, Defendant Moholland, Defendant UniGroup, and Defendant Payne may be served with Process upon their registered agent and/or on the Secretary of State pursuant to Georgia Non-Resident Motorist Act, O.C.G.A. § 40-12-1 et seq.

37.     That Georgia's long-arm statute, O.C.G.A. § 9-10-91 provides in relevant part as follows:

> A court of this state may exercise personal jurisdiction over any nonresident or his executor or administrator, as to a cause of action arising from any of the acts, omissions, ownership, use, or possession enumerated in this Code section, in the same manner as if he were a resident of the state, if in person or through an agent, he:

(1)     Transacts any business within this state;

(2)     Commits a tortious act or omission within this state, except as to a cause of action for defamation of character arising from the act; or

(3)     Commits a tortious injury in this state caused by an act or omission outside this state if the tortfeasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state.

38.     As such, this Court additionally has personal jurisdiction in accordance with O.C.G.A. § 9-10-91.

39.     In accordance with 28 U.S.C § 1391 (c) and (d), venue is proper in the Southern District of Georgia as Defendants maintain minimum contacts, transact business in the Southern District of Georgia, and are therefore subject to personal jurisdiction. Additionally, and more specifically, venue is appropriate in this Court and this Court has personal jurisdiction over Defendants because the incident causing the tortious injury giving rise to this complaint took place in the Southern District of Georgia. As pleaded herein, subject matter jurisdiction, personal jurisdiction, and venue are proper.

## **DEFENDANTS' ORGANIZATIONAL STRUCTURE**

40.     At all times relevant to the Complaint, Defendant Driver was employed and working in the course and scope of his employment with Defendant Mayflower, Defendant UniGroup, Defendant Moholland, and/or Defendant Locke. Defendant Driver operated the tractor-trailer in furtherance of Defendant Mayflower, Defendant UniGroup, Defendant Moholland, and/or Defendant Locke's business.

41.     That Defendant Mayflower and Defendant Locke held agreements and/or contracts that are at all times relevant to motor vehicle collision in Georgia.

42.   Defendant Moholland is a party to an "agency agreement" with Defendant Mayflower Transit, and its subsidiaries and parent company, UniGroup, and, pursuant to that agreement, provides transportation under Mayflower Transit's federal motor carrier authority. As an agent, Joe Moholland is required to comply with all of UniGroup's and Mayflower Transit policies and procedures.

43.   The agency agreement between Defendant Mayflower and Joe Moholland reads that "any shipment that has commenced prior to the date on which this agreement is terminated, the terms, provisions, and conditions of this agreement will continue to apply to such shipment." This shipment commenced prior to the termination date, and as such, Joe Moholland was an agent of Defendant Mayflower Transit.

44.   Pursuant to the agency agreement, Defendant Mayflower Transit control rates and charges to customers and compensation for Joe Moholland and can penalize Joe Moholland and/or Defendant Locke Relocations for non-compliance with Defendant Mayflower Transit's policies, including the Agency Manual and Agency Resource Manual and Agency Resource Guide (and the current iterations of these).

45.   Pursuant to the agency agreement, Joe Moholland may enter into independent owner agreements with drivers but must do so only on forms approved by Defendant Mayflower. Joe Moholland may not use drivers that are disqualified pursuant to Mayflower's "disqualification policies." Joe Moholland or its principals have direct or indirect ownership and control over Mayflower Transit and are parties

11

to various agreements between and among each other.

46.     Pursuant to the Independent Contractor Operating Agreement, authored and prepared by Mayflower Transit, LLC, Defendant Mayflower controls rates and charges to customers and compensation for Joe Moholland and Defendant Mayflower Transit, and can penalize Joe Moholland and/or Defendant Locke Relocations for non-compliance with Mayflower Transit, United Van Lines and UniGroup's policies.  Defendants never terminated this agreement and Defendant Locke Relocations had no notice of termination. By extension, Defendant Locke Relocations is an employee/agent of Mayflower Transit.

47.     Defendant Mayflower, Defendant Payne, Defendant Moholland, Defendant Locke, and Defendant Unigroup are liable for all Defendant Driver's acts under the doctrine of *respondeat superior*, agency, ostensible/apparent agency, and/or master-servant doctrines.

48.     That at all times material, Joe Moholland leased the trailer by Defendant Payne. Defendant Moholland, at the time of the crash and/or when shipment commenced, was an agent for Defendant Mayflower and/or Defendant Mayflower's parent companies.

49.     Defendant Locke is an agent for Defendant Moholland and Defendant Mayflower.

50.     Defendant Moholland advertises on its Facebook page that "We are a Mayflower moving and storage company that operates out of Virginia and the Washington DC area, and we provide all types of moving and storage services both

locally and internationally."[1]

51.     Defendant Mayflower authorized and was responsible for the use of said tractor- trailer by Defendant Driver, and under its authority as a motor carrier. Defendant Mayflower's DOT numbers were displayed on the tractor trailer.

52.     At one time, prior to this incident, Moholland advertised the relationship between Moholland and Defendant Mayflower on their website homepage which read, "[w]ith our high expectations from when we began in 1987, we were able to meet Mayflower's expectations in 1998 and become an agent for them to help people move all across the globe."

53.     Defendant Mayflower was the broker or principal for the relocation of household goods through their agents, Defendant Locke, Defendant Moholland, and Defendant Driver.

54.     Defendant Mayflower chose to retain, and/or hire Defendant Locke, Defendant Moholland and Defendant Driver without ensuring that they could operate in a safe and competent manner by, in part, failing to ensure the proper selection of an authorized interstate motor carrier who had the proper financial security.

55.     Defendant Mayflower and/or Defendant Moholland failed to properly lease and/or terminate the lease of the commercial motor vehicle (tractor) operated by Defendant Driver at the time of the collision. Defendants chose not to properly terminate the agency agreement, by certified mail, return receipt, as required by the

---

[1] https://www.facebook.com/joemohollandmoving/

agreement.

56.     Defendant Mayflower is also liable for the negligent brokerage and/or arranging/facilitating the shipping of household goods through Defendant Locke and Joe Moholland.

57.     Federal Motor Carrier Safety Regulations require an interstate carrier that leases a vehicle to (1) make the arrangement in writing signed by the parties specifying the duration and the compensation to be paid by the carrier, (2) carry a copy of the arrangement in each motor vehicle to which it applies during the period the arrangement is in effect, (3) inspect the motor vehicle and obtain liability and cargo insurance on it, and (4) have control of and be responsible for operating the vehicle in compliance with the federal regulations and other applicable laws as if the motor vehicle was owned by the carrier.

58.     However, Defendants were negligent in failing to properly terminate the lease within the time prescribed or failed to have a reasonable time period, and as a result, the relationship continued with Mayflower and Moholland, by and through Defendant Driver and Defendant Locke. This is further evidenced by the DOT, License Plate numbers, identification numbers, placards, and signage on the truck/trailer at the time of the incident.

59.     Joe Moholland acted as an agent of Defendant Mayflower. As a part of the agency, Moholland uses and stores Defendant Mayflower trucks/trailers on its address listed for business activity. Further, many employees, agents, representatives, and officials are shared by both Defendant Mayflower and

14

Moholland.

60.    As of March 2023, there existed several commercial motor vehicles on Moholland's lot that still displayed "Mayflower" markings.

61.    Upon information and belief, Defendant Driver has an email address that is registered to Mayflower ending in @mayflower.com.

62.    That, upon information and belief, Defendant Moholland and Defendant Mayflower have (or had at the time of this incident) identical or nearly identical ownership, governance, management, office locations, letterhead, equipment, telephone numbers, and other indicia of corporate identity. In fact, the former sign outside of Moholland's listed business address stated, "Mayflower Transit Joe Moholland Moving," and when viewing Google Street images, there exists Mayflower commercial motor vehicles, trailers, and other entities/subsidiaries of Defendant Mayflower.

63.    That upon information and belief, Joe Moholland and Defendant Mayflower are so intertwined within the corporate web as to constitute a single business enterprise, and/or partnership.

64.    That injustice to Plaintiff and/or others would result were this Court to recognize any legal distinction between Defendant Mayflower and Defendant Moholland, when the entities themselves have blurred, ignored, or wholly erased such distinctions.

65.    The operation of Defendant Moholland and Defendant Mayflower are essentially one business acting as a broker for the shipping company that it

negligently hired and retained, Defendant Locke and Defendant Driver, Nicholas Burist.

66.     The purpose of Defendant Moholland and Defendant Mayflower commingling vehicles and property is based on shipper/broker liability. The goal between Moholland, Mayflower and Defendant Locke is avoiding safety regulations by the practice of leasing equipment from and to non-regulated carriers. Therefore, the Defendants attempt to shield themselves from liability as carriers as part of lease agreements, indemnity agreements, and purported due diligence searches. These Defendants are attempting to shift blame to the shipper, Defendant Locke. Due to Defendant Locke having little or no experience with long-haul traveling and/or interstate traveling per the FMSCA, the Defendants sham safety regulations and their financial responsibility, attempting to shift the same to shippers, lessors, leases, employees and/or other members of the public.

67.     Simply, the relationship formed between Defendants Moholland, Locke, and Defendant Mayflower was designed with the purpose of skirting financial and safety responsibility through their driver, Defendant Driver.

68.     No reasonably prudent shipper, broker, agent, or master would have hired or allowed Defendant Driver to take possession of their truck/trailer.

69.     Defendants knew or should have known that Defendant Locke is not authorized to travel or operate in interstate commerce.

70.     That upon information and belief, at all times relevant hereto, Defendant Mayflower, and Defendant Locke, and Moholland, were acting in concert,

16

and/or alternatively, Moholland and Defendant Locke were acting as authorized agents for Defendant Mayflower, and all improper acts and unlawful conduct of Defendants Locke, Moholland and/or Defendant Driver are attributable to Defendants Lock, Defendant Moholland and Mayflower.

71.     Defendant Mayflower and Defendant UniGroup use its marketing and advertising to encourage and promote the services of its agents, Defendant Moholland and Defendant Locke, for its own pecuniary gain.

72.     In fact, continuing after the collision that fatally injured Plaintiff, Defendant Moholland was continuing to receive payments from Defendant Mayflower Transit and the Defendant Mayflower Transit was continuing to pay for Defendant Driver's insurance premium and the insurance of several other Joe Moholland drivers.

## GENERAL ALLEGATIONS

73.     Plaintiff incorporates herein by reference all the allegations of the previous paragraphs of this Complaint.

74.     That on or about July 1, 2022, Defendant Driver, in his capacity as an employee/agent and/or apparent agent of Defendant Locke, Defendant Moholland, and Defendant Mayflower, was traveling southbound on I-95 in Camden County, Georgia.

75.     That on July 1, 2022, Michael Anthony Hines, Jr. was a passenger traveling in the sleeper compartment of the tractor owned, leased, controlled, and/or operated by Defendants.

76.   That on or about July 1, 2022, Defendant Driver, after recklessly colliding with other vehicles, left his lane of travel and began to travel through the center guardrails.

77.   Defendant Driver suddenly and without warning left his proper lane of travel, crossed over the median and trigged a series of collisions involving the tractor trailer he was operating, resulting in the tractor sleeper cab being forcefully struck and intruded upon, causing Michael Anthony Hines, Jr's death.

78.   As a result of Defendants' negligence, four people died, including decedent Michael Anthony Hines, Jr., and several more were hospitalized and/or injured.

79.   Further, the interstate was closed in both directions for several hours.

80.   As set forth in the Georgia Motor Vehicle Crash Report, specifically Report Number C000745264-01, Defendant Driver was driving under the influence of drugs and/or alcohol which was also one of the contributing factors of Plaintiff's death. This action by Defendant Driver constitutes a violation of O.C.G.A § 40-6-391 and is negligence per se under Georgia law.

81.   As a result of the incident, Defendant Driver received several citations for violation of Georgia law from the Georgia State Patrol by the investigating officer. These citations were issued as a result of violations of: (1) O.C.G.A. § 40-8.76.1; (2) O.C.G.A. § 40-6-393(A); (3) O.C.G.A. § 16-13-2(b); (4) O.C.G.A. § 40-6-253; (5) O.C.G.A. § 40-6-49; (6) O.C.G.A. § 40-6-48; (7) O.C.G.A. § 40-1-8(b)(2)(E); (8) O.C.G.A. § 40-6-391(a)(1-5); and (9) O.C.G.A. § 40-6-39. These violations of Georgia

law by Defendant Driver are negligence per se.

82.    In addition to the above, Defendant Driver was also negligent per se in violating laws of the State of Georgia. Specifically, Defendant Driver violated O.C.G.A § 40-6-48 in failing to maintain his lane of travel; O.C.G.A § 40-6-93 in failing to exercise due care; O.C.G.A § 40-6- 390 for driving reckless; and O.C.G.A § 40-6-394 for causing serious injury by a vehicle.

83.    That at all times material hereto, Defendant Driver had a duty to operate the vehicle he was driving in a safe and prudent manner and to avoid injuring other motorists and individuals, specifically, Plaintiff.

84.    Defendant Driver chose not to operate the tractor-trailer with the due care exercised by individuals in like or similar circumstances and operated the vehicle in a manner showing a negligent, willful, and wonton disregard for the safety of others, including Plaintiff. All Defendants are legally responsible for these actions and inactions of Defendant Driver.

85.    Following the collision, as relevant to Defendants, pertaining to the negligent maintenance, repair, operation, and entrustment of the vehicle, the truck/trailer had the following deficiencies in violation of Federal Motor Carrier Safety Regulations: 393.75(a)(1) (Tire-ply or belt material exposed: Tractor: Left side axle number 1 outside tire has belt material exposed); 393.75(a)(3) (Tire-flat and/or audible air leak: Tractor: Right side axle number 1 tire is flat.); 393.48(a) (Inoperative/defective brakes: Tractor: Right side axle number 3 brake drum friction surface is contaminated by oil and grease); 396.5(b) (Hubs - Wheel seal leaking -

inner wheel: Tractor: Right side axle number 3 inner wheel seal actively leaking); 393.207(a) (Axle positioning parts defective/missing: Tractor: Left side axle number 1 u-bolt assembly is cracked); 393.75(a)(3) (Tire-flat and/or audible air leak: Trailer: Right side axle number 1 and 2 outside tire is flat); 393.201(a) (Frame cracked / loose / sagging / broken: Trailer: Floor is sagging); 393.11 (No or defective lighting devices or reflective material as required: Trailer: 4 of 6 side marker lamps missing); 393.83(g) (Exhaust leak under driver and/or sleeper compartment: Tractor: Exhaust leak under cab, whole in exhaust.); 393.48(a) (Inoperative/defective brakes: Trailer: Right side axle number 1 brake is defective. Brake drum is rusted.); 393.60(c) (Damaged or discolored windshield: Tractor: Windshield cracked.); and 396.3(a)(1) (BRAKES OUT OF SERVICE: The number of defective brakes is equal to or greater than 20 percent of the service brakes on the vehicle or combination).

86.     Defendants were on actual and/or constructive notice of the above deficiencies and failed to correct and/or failed to cure in a reasonable manner.

87.     One or more of the above deficiencies existed prior to the collision, and Defendants knew or should have known the nature and extent yet chose not to maintain and/or repair in accordance with industry standards, and the rules and regulations of the Federal Motor Carrier Safety Act and State law.

88.     Decedent acted with reasonable care under the conditions and circumstances then existing.

89.     Decedent did nothing to contribute to his fatal bodily injuries.

## COUNT ONE - NEGLIGENCE
## OF DEFENDANT DRIVER, NICHOLAS BURIST

90.    Plaintiff incorporates herein by reference all the allegations of the previous paragraphs, of this Complaint.

91.    At all times material hereto, Defendant Driver was a professional driver with a commercial driver's license, and, at the time of the incident, was driving a commercial vehicle entrusted to him by Defendant Locke, Defendant Payne, Defendant Moholland, and Defendant Mayflower.

92.    At all times material hereto, Defendant Driver was driving a commercial motor vehicle in interstate commerce and was subject to not only to Georgia traffic laws and trucking safety regulations, but also the Federal Motor Carrier Safety Regulations.

93.    At all times material hereto, Defendant Driver owed a duty of care to maintain and operate its commercial motor vehicle in a safe manner in compliance with all safety rules, including statutes, rules and regulations governing the operation and maintenance of vehicles including tractor trailers upon Georgia, and interstate roadways.

94.    Defendant Driver was negligent in the operation, maintenance, and inspection of the commercial motor vehicle he was driving.

95.    Defendant Driver was driving in a grossly negligent manner, including driving recklessly and erratically, before losing control of his tractor trailer and fatally injuring Michael A. Hines, Jr.

96.    Defendant Driver's actions in failing to operate the commercial vehicle

sober, stop and/or slow his tractor trailer, or obey the rules of the road showed willful misconduct or an entire want of care, which would raise the presumption of conscious indifference to consequences as defined by O.C.G.A. § 51-12-5.1. Thus, Plaintiff and the Estate are also entitled to an award of punitive damages.

97.   Defendant Driver was negligent, grossly negligent, and/or negligent per se which constitutes the direct and proximate cause of the injury to Plaintiff also consisted of, but is not limited to the following:

a)   Not maintaining control of his vehicle in violation of O.C.G.A. § 40-6-48;

b)   Driving an unsafe vehicle in violation of O.C.G.A. § 40-8-7;

c)   Not keeping his vehicle under control at all times, in violation of O.C.G.A. § 40-6-390;

d)   Not exercising due care in operating a motor vehicle in violation of O.C.G.A. § 40-6-241;

e)   Acting in reckless disregard for the safety of persons or property in violation of O.C.G.A. § 40-6-241.2;

f)   Not keeping a proper lookout;

g)   Driving under the influence of alcohol and/or drugs in violation of O.C.G.A. § 40-6- 391;

h)   Not adhering to safe driving principles expected of professional drivers;

i)   Not operating the truck in accordance with generally accepted safety principles for professional drivers and/or the commercial motor vehicle industry;

j)   Not operating the truck in a safe and prudent manner in view of the conditions that existed at the time of the subject collisions;

k)   Violating the Georgia Uniform Rules of the Road including O.C.G.A. § 40-6-49 (following too closely); O.C.G.A. § 40-6-180

(failing to drive his vehicle at a reasonable and prudent speed under the conditions); O.C.G.A. § 40-6-390 (driving a vehicle in reckless disregard of the safety of persons or property); and any other violations, each of which constitute negligence *per se*;

l)   Otherwise failing to act reasonably and prudently as a professional commercial driver should under the circumstances; and

m)   Such other specifications of negligence that shall be added by amendment or proven at trial.

98.   At the time of the subject wreck, Defendant Driver had a duty to drive in conformity with the Federal Motor Carrier Safety Regulations and Georgia law as well as the industry and corporate standards and guidelines emanating from these safety regulations and Georgia law, including, but not limited to, the Required Knowledge and Skills set forth in 49 CFR §§ 383.111 and 383.113 as well as the mandates of 49 CFR §§ 390-395.

99.   Alone or in conjunction with the negligence of the other defendants, Defendant Nicholas Burist's negligence directly and proximately caused Plaintiff's injuries and damages. Defendant Nicholas Burist is therefore liable for Plaintiff's injuries and damages.

## COUNT TWO - NEGLIGENCE OF
## DEFENDANT MAYFLOWER TRANSIT

100.   Plaintiff incorporates herein by reference all the allegations of the previous paragraphs, of this Complaint.

101.   At all times material hereto, Defendant Driver was an employee, agent, and/or apparent agent of Defendant Mayflower acting within the scope of course of his employment or agency.

102.   Defendant Moholland acted as an agent of Defendant Mayflower and in furtherance of Defendant Mayflower's business.

103.   Defendant Locke acted as an agent and/or independent contractor, approved by Mayflower, in furtherance of Defendant Mayflower's business.

104.   That Defendant Mayflower encouraged and required its agents to be profitable through solicitation of its services in an effort to provide maximum profits to Mayflower.

105.   At all times material hereto, Defendant Driver was operating a commercial motor vehicle under dispatch and under the authority granted to Defendant Driver by Defendant Mayflower and its agents.

106.   Defendant Driver was operating on behalf of Defendant Mayflower and in furtherance of the business of Defendant Mayflower and its agents.

107.   At all times material hereto, Defendant Mayflower, Defendant Locke, and/or Defendant Moholland maintained immediate direction and control of Defendant Driver, and the vehicle he was operating.

108.   Plaintiff and Decedent, Michael Anthony Hines, Jr. suffered injuries, harm, fatal injuries, and damages as a result of Defendant Mayflower's agent/employee's operation of the subject vehicle in a negligent and reckless manner.

109.   Defendant Mayflower is liable for its own negligence and for the tortious acts, negligence and for the negligent actions and omissions of Defendant Driver, Defendant Locke, and Defendant Moholland pursuant to the doctrine of respondeat superior, rules of agency and by operation of common law, apparent

24

agency, and Federal Motor Carrier statutes and regulations.

110.   As a direct and proximate result of the foregoing breaches of duties, Plaintiff did suffer the injuries and damages laid out herein.

## COUNT THREE – VICARIOUS LIABILITY – DEFENDANTS MAYFLOWER AND UNIGROUP, AS STATUTORY EMPLOYER UNDER FMSCR

111.   Plaintiff incorporates herein by reference all of the allegations of the previous paragraphs, of this Complaint.

112.   The Federal Motor Carrier Safety Regulations ("FMCSR"), define two types of motor carriers: (a) "private motor carriers" as "a person who provides transportation of property or passengers, by commercial motor vehicle, and is not a for-hire motor carrier," and (b) "for-hire motor carriers" as "a person engaged in the transportation of goods or passengers for compensation." 49 C.F.R. § 390.5.

113.   When used in the FMCSR, the term "motor carrier" "means a for-hire motor carrier or a private motor carrier" and "includes a motor carrier's agents, officers and representatives as well as employees responsible for hiring, supervising, training, assigning, or dispatching of drivers and employees concerned with the installation, inspection, and maintenance of motor vehicle equipment and/or accessories." 49 C.F.R. § 390.5.

114.   The FMCSR defines a "driver" as "any person who operates any commercial vehicle." 49 C.F.R. § 390.5.

115.   The FMCSR defines "employee" as "any individual, other than an employer, **who is employed by an employer and who in the course of his or**

25

her employment directly affects commercial motor vehicle safety. **Such term includes a driver of a commercial vehicle (including an independent contractor while in the course of operating a commercial motor vehicle),** a mechanic, and a freight handler. Such term does not include an employee of the United States, any State, any political subdivision of a State, or any agency established under a compact between States and approved by the Congress of the United States who is acting within the course of such employment." 49 C.F.R. § 390.5 (emphasis added).

116.  The FMCSR defines **"employer" as "any person engaged in a business affecting interstate commerce who owns or leases a commercial motor vehicle in connection with that business, or assigns employees to operate it**, but such term does not include the United States, any State, any political subdivision of a State, or an agency established under a compact between States approved by the Congress of the United States." 49 C.F.R. § 390.5. (emphasis added).

117.  The FMSCR defines "broker" as "a person who, for compensation, arranges, or offers to arrange, the transportation of property by an authorized motor carrier. Motor carriers, or persons who are employees or bona fide agents of carriers, are not brokers within the meaning of this section when they arrange or offer to arrange the transportation of shipments which they are authorized to transport and which they have accepted and legally bound themselves to transport." 49 C.F.R. § 371.2(a) (emphasis added).

118.  Defendant Mayflower and Defendant UniGroup are an "authorized

motor carrier" subject to the Federal Motor Carrier Safety Regulations.

119.   Defendant Mayflower operates under USDOT number 2881058; MC Number 2934; and Freight Forwarding Number 7137. 97.

120.   As part of its operations as a motor carrier, Defendant Mayflower and Defendant Moholland maintain a fleet of trucks and other equipment.

121.   Joe Moholland, as an agent of Defendant Mayflower, was legally bound to transport the cargo and/or equipment used to transport such cargo that was being transported by Defendant Burist at the time of the wreck with Plaintiff.

122.   Defendant Mayflower was legally bound to safely, and in compliance with all applicable laws, transport the cargo and/or equipment used to transport such cargo that was being transported by Defendant Driver at the time of the wreck which caused the death of Plaintiff.

123.   Defendant Mayflower was acting as a "motor carrier" of the tractor trailer at the time of its collision and was the statutory employer of Defendant Nicholas Burist.

124.   Defendant Mayflower was acting as a "motor carrier" of the tractor trailer at the time of its collision with Plaintiff's decedent, Michaeal Anthony Hines, Jr., and was the statutory employer of Defendant Burist.  Defendant Mayflower was contractually obligated, according to the agency agreement, to provide services including oversight, training, and additional specifications per the agency agreement.

125.   At all times relevant to this Complaint and to the motor vehicle collision at issue, the tractor-trailer being operated by Defendant Burist contained markings

identifying it as it being "Operated by Mayflower Transit Fenton, MO."

126.   Defendant Mayflower and/or Defendant UniGroup had knowledge or should have had knowledge of Defendant Burist transporting goods under its authority within days and/or weeks of the subject collision.

127.   Defendant Mayflower arranged for Moholland and Defendant Locke to transport the cargo that Defendant Mayflower was legally bound to transport.

128.   That Defendant Mayflower had knowledge or should have had knowledge that Defendant Burist was driving the tractor leased/financed by Trans Advantage and the trailer leased by Defendant Payne.

129.   That Defendant Mayflower, through Trans Advantage, had actual notice that ongoing service was being performed to the tractor that Nicholas Burist was driving at the time of the collision.

130.   Defendant UniGroup was responsible for the DOT compliance, training, and safety compliance of its Driver and Agents, Nicholas Burist, Joe Moholland, and Locke Relocations.

131.   Both the trailer and the tractor were negligently maintained and unsafe/unfit for highway travel, specifically in Georgia.

132.   Defendant Mayflower, and/or Defendant UniGroup, through agreement with Defendant Moholland and/or Defendant Locke, had the right to control and/or did control the activities and work of Defendant Moholland and/or Defendant Locke and its drivers, including Defendant Driver, Nicholas Burist, by one or more of the following particulars:

a) Defining the delivery route drivers must take while engaged in the transport of Mayflower loads and/or equipment;

b) Requiring that drivers receive its advance approval for any trip layover time, driver detention, route changes, payment of tolls, and other matters of operation;

c) Establishing set times for the pickup and delivery of loads for drivers;

d) Providing drivers and crew members uniforms that displayed the Mayflower brand;

e) Such other means of control over the operations, activities, and work of drivers operating as provided for by Mayflower's agreements with Joe Moholland and/or Defendant Locke;

f) Listing Defendant Burist as an agent on Mayflower's website and giving him an email address within its domain;

g) Allowing or ordering Defendant Burist to operate its equipment, including the trailer and trailer;

h) Qualifying Defendant Burist as a driver;

i) Qualifying the Mayflower Tractor and other equipment;

j) Continuing to allow Defendant Moholland and/or Defendant Locke access to the mainframe, including after the collision;

k) Providing that Mayflower was not required to pay any money to Defendant Moholland unless it followed specifically Mayflower's rules, policies, and procedures in the transit or delivery of any cargo assigned by Mayflower to Moholland;

l) Providing that Defendant Moholland was not required to pay any money to Defendant Locke unless it followed all rules, policies, and procedures in the transit or delivery of any cargo; and

m)  Requiring Moholland to keep and provide documents to and for Mayflower related to routes, deliveries, payments, and other matters.

133.   At all times relevant to this Complaint and the motor vehicle collision that is the subject of this action, Defendant Moholland and Defendant Mayflower

were Defendant Driver's statutory employer while Defendant Driver Nicholas Burist was engaged in the transportation of Mayflower's loads and/or equipment.

134.   Defendant Driver was a statutory employee of Defendants Mayflower and/or UniGroup under 49 U.S.C. § 31132(2).

135.   Accordingly, Defendant Mayflower and/or Defendant UniGroup is vicariously liable under the doctrine of respondeat superior for Defendant Driver's negligent acts and/or omissions committed during the course and scope of his agency and/or employment, and Defendant Driver Nicholas Burist was operating under the authority of Mayflower, or, at minimum, under the shared authority of Defendants Mayflower, Moholland and/or Defendant Locke.

136.   Therefore, Plaintiff may recover from Defendant Mayflower and/or Defendant UniGroup for injuries and damages.

## <u>COUNT FOUR - NEGLIGENCE OF JOE MOHOLLAND</u>

137.   Plaintiff incorporates herein by reference all of the allegations of the previous paragraphs of this Complaint.

138.   At all times material hereto, Defendant Driver was an employee, agent, and/or apparent agent of Defendant Joe Moholland, Defendant Mayflower, and Defendant Locke acting within the scope of course of his employment or agency.

139.   Defendant Moholland relied upon the expertise of Defendant UniGroup throughout its agency agreement with Defendant UniGroup and/or Defendant Mayflower.

140.   At all times material hereto, Defendant Driver was operating a commercial motor vehicle under dispatch and under the authority granted to Defendant Driver by Defendant Joe Moholland.

141.    Defendant Driver was operating on behalf of Defendant Joe Moholland and Defendant Mayflower and in furtherance of their business.

142.    Defendant Moholland, Defendant Locke, and/or Defendant Mayflower gave Defendant Driver and their employees/agents authority to perform services on their behalf.

143.    Plaintiff and Decedent suffered injuries, harm, fatal injuries, and damages as a direct and proximate result of Defendant Moholland, Defendant Mayflower, and/or Defendant Locke's employee's operation of the subject vehicle in a negligent and reckless manner.

144.    Defendant Joe Moholland is liable for its own negligence and for the tortious acts, negligence and for the negligent actions and omissions of Defendant Driver, Defendant Locke, and Defendant Mayflower pursuant to the doctrine of respondeat superior, rules of agency and by operation of common law and Federal Motor Carrier statutes and regulations.

145.    Therefore, Plaintiff may recover from Defendant Moholland for injuries and damages.

## COUNT FIVE - NEGLIGENCE OF DEFENDANT LOCKE RELOCATIONS

146.    Plaintiff incorporates herein by reference all of the allegations of the previous paragraphs, of this Complaint.

147.    At all times material hereto, Defendant Driver was an employee, agent, and/or apparent agent of Defendant Locke acting within the scope of course of his employment or agency.

148.    At all times material hereto, Defendant Driver was operating a commercial motor vehicle under dispatch and under the authority granted to Defendant Driver by Defendant Locke, Defendant Mayflower, and/or Defendant

UniGroup.

149.   Defendant Driver was operating on behalf of Defendant Locke and in furtherance of the business of Defendant Locke, Defendant Mayflower, and Defendant UniGroup.

150.   Defendant Locke, and/or Defendant Mayflower gave Defendant Driver and their employees/agents authority to perform services on their behalf.

151.   Plaintiff suffered injuries, death, harm, and damages as a direct and proximate result of Defendant Locke and/or Defendant Mayflower's employee's operation of the subject commercial vehicle in a negligent and reckless manner.

152.   Defendant Locke is liable for its own negligence and for the tortious acts, negligence and for the negligent actions and omissions of Defendant Driver, Defendant Mayflower and Defendant Mayflower pursuant to the doctrine of *respondeat superior*, rules of agency and by operation of common law and Federal Motor Carrier statutes and regulations.

153.   Therefore, Plaintiff may recover from Defendant Locke for injuries and damages.

## COUNT SIX - NEGLIGENT HIRING, TRAINING, RETENTION, SUPERVISION, AND MAINTENANCE/REPAIR BY DEFENDANTS MOHOLLAND, LOCKE, MAYFLOWER, UNIGROUP AND PAYNE

154.   Plaintiff incorporates herein by reference all of the allegations of the previous paragraphs, of this Complaint.

155.   Defendants have certain duties and responsibilities, including but not limited to those defined by the Federal Motor Carrier Safety Regulations, State

trucking safety regulations and trucking industry standards.

156.   Those duties include the duty to properly qualify Defendant Driver, the duty to properly train Defendant Driver, the duty to properly supervise Defendant Driver, the duty to properly inspect and maintain its vehicles, and the duty to otherwise establish and implement appropriate management controls and systems for the safe operation of its commercial motor vehicle.

157.   Defendants Moholland, Locke, Mayflower, UniGroup and Payne were negligent and/or grossly negligent in one or more of the following particulars:

a)   In negligently entrusting the vehicle to someone Defendants knew or should have known would operate the vehicle without using due care and without regard for the safety and rights of the public using the roadway and the Plaintiff in particular;

b)   In negligently entrusting the vehicle to someone they knew or should have known would operate the vehicle in a negligent, grossly negligent, careless, reckless, willful, wanton, and unlawful manner as to create a dangerous situation and render a collision inevitable or highly likely, in disregard of the laws of the State of Georgia;

c)   In negligently entrusting the vehicle to someone they knew or should have known would fail to exercise that degree of care that a reasonable and prudent person would have exercised under the same or similar circumstances;

d)   In choosing not to appreciate the gravity and seriousness of having an unsafe, unqualified driver with a history of careless driving use their vehicle;

e)   In choosing not to ensure that the driver of their vehicle would comply with all applicable statutory codes and regulations;

f)   In choosing not to properly hire, train, and/or supervise their employee/agent driver Defendant Driver to ensure that the vehicle was driven and operated in a safe and proper manner;

g)   In choosing not to properly train and/or supervise their

employee/agent driver Defendant Driver and others involved with maintenance, repair, regulatory compliance, and/or safety to ensure that proper pre-trip, post-trip, periodic, quarterly, and/or annual inspections were performed, including properly on the subject vehicle, and its component parts;

h) In choosing, by and through their employee/agent driver Defendant Driver, not to have the required driver knowledge necessary in order to safely operate the subject vehicle, including but not limited to the procedures to obey traffic laws and the rules of the road;

i) In choosing not to create, maintain, adhere to, and/or implement appropriate policies and procedures to ensure alcohol and drugs were not being used or consumed by its employees and drivers;

j) In choosing not to create, maintain, and/or implement appropriate policies and procedures related to inspection and safety for its drivers, including their employee/agent driver Defendant Driver, and for safety, regulatory compliance, and/or inspection, maintenance, and service of motor vehicle;

k) In choosing not to properly and/or timely inspect, maintain, service, and/or repair the subject vehicle/trailer and its component parts to ensure that the same could be utilized and operated safety;

l) In choosing not to use due care;

m) In any other acts that represent a breach of the statutory or common laws of the State of Georgia or the United States; and

n) In any other such manner that Plaintiff may become aware of through discovery and/or at trial.

158.   Additionally, Defendants knew or should have known about Defendant Driver's drug and/or alcohol addiction, frequent use of, and abuse of drugs.

159.   Defendants knew or should have known about Defendants current use, abuse and/or addiction to drugs and/or alcohol.

160.   Defendants knew or should have known that Defendant Driver's current and/or past addiction to drugs and alcohol and/or abuse of drugs could cause

severe injuries and/or death to the general public, including the Plaintiff.

161.   Despite having the aforesaid knowledge, Defendants Moholland, Locke and Mayflower hired and retained Defendant Driver and allowed him to operate a vehicle while in its employ.

162.   Despite knowing, or having reasons to know of the above, Defendants failed to test for use of drugs and/or alcohol, terminate Defendant Driver prior to this collision, and continued to allow him to operate the commercial motor vehicle to facilitate Defendants' business interests.

163.   Defendant Mayflower, Defendant UniGroup, Defendant Moholland, and Defendant Locke not only allowed Defendant Driver to operate the vehicle within the state of his residence, Virginia, but allowed, facilitated, and encouraged Defendant Driver's transportation throughout the United States without properly monitoring or supervising this driver.

164.   Defendant Mayflower, Defendant UniGroup, Defendant Moholland, and Defendant Locke  were each negligent in hiring, qualifying, training, entrusting, supervising, and retaining Defendant Driver in connection with his operation of its commercial motor vehicle.

165.   As a direct and proximate result of the negligence, gross negligence, carelessness, recklessness, willfulness and wantonness of Defendants, as is set forth more fully herein, Michael Anthony Hines, Jr. suffered severe injuries, resulting in death, has endured, pain and suffering, suffered mentally and emotionally.

166.   As a direct and proximate result of the negligence, gross negligence,

carelessness, recklessness, willfulness and wantonness of the Defendants, as is set forth more fully herein, Decedent, Michael Anthony Hines was killed and Plaintiffs suffered mentally and emotionally, endured pain and suffering, lost the companionship of Decedent and has incurred, and will incur, various medical and funeral expenses, and otherwise suffered damages.

167.   As a direct and proximate result of negligence of all Defendants, Decedent sustained serious bodily injuries, pain and suffering, and fatal injuries.

168.   Defendants are liable for all damages allowed by law for the injuries, damages, and losses sustained by the Plaintiff and the Estate.

## COUNT SEVEN – NEGLIGENCE OF PAYNE

169.   Plaintiff incorporates herein by reference all of the allegations of the previous paragraphs, of this Complaint.

170.   Defendant Payne is a motor carrier as defined by the Federal Motor Carrier Safety regulations and was engaged in interstate commerce.

171.   Defendant Payne is subject to the Federal Motor Carrier Safety Regulations.

172.   Upon Information and belief, Defendant Payne owned the trailer being hauled and/or operated by the Defendant Driver and leased the trailer to Joe Moholland.

173.   Defendant Payne has certain duties and responsibilities as defined by the Federal Motor Carrier Safety Regulations and industry standards, including a duty to properly inspect, repair and maintain its trailers for the safe operation of the

trailers.

174.    Defendant Payne was negligent in failing to meet its duties and responsibilities under the Federal Motor Carrier Safety Regulations, Georgia law, and industry standards in the inspection, maintenance, and repair of the trailer operated by the Defendant Driver in the following ways:

a) An unsafe vehicle in violation of O.C.G.A. § 40-8-7;

b) 393.75(a)(3) (Tire-flat and/or audible air leak: Trailer: Right side axle number 1 and 2 outside tire is flat);

c) 393.201(a) (Frame cracked / loose / sagging / broken: Trailer: Floor is sagging);

d) 393.11 (No or defective lighting devices or reflective material as required: Trailer: 4 of 6 side marker lamps missing);

e) 393.83(g) (Exhaust leak under driver and/or sleeper compartment: Tractor: Exhaust leak under cab, whole in exhaust);

f) 393.48(a) (Inoperative/defective brakes: Trailer: Right side axle number 1 brake is defective. Brake drum is rusted.)

175.    These deficiencies existed at the time the trailer was leased to Defendants, and Defendant Payne failed to warn, correct, or cure these deficiencies to the detriment of the public, specifically Plaintiff.

176.    As a direct and proximate result of the negligence, gross negligence, carelessness, recklessness, willfulness and wantonness of Defendant Payne, as is set forth more fully herein, Plaintiff has suffered severe injuries and death, has endured, pain and suffering, suffered mentally and emotionally, and has incurred, various medical expenses.

177.    Defendant Payne is liable for all damages allowed by law for the

injuries, damages, and losses sustained by Plaintiff.

## COUNT EIGHT – NEGLIGENCE OF DEFENDANT UNIGROUP

178.   Plaintiff incorporates herein by reference all of the allegations of the previous paragraphs, of this Complaint.

179.   At all relevant times, Defendant Nicholas Burist was the employee, agent, servant, or independent contractor for Defendant UniGroup. Defendant Nicholas Burist was in the course and scope of his employment at the time of the fatal collision—or in the alternative, under the control of—UniGroup. Accordingly, Defendant UniGroup is vicariously liable for the acts of Defendant Nicholas Burist, Defendant Moholland, and Defendant Locke as described in the causes of action above.

180.   At all relevant times, Defendant Mayflower, Defendant Moholland , and Defendant Locke were the agent or servant Defendant UniGroup. Defendant Locke and Defendant Moholland were in the course and scope of its agency and servanthood at the time of the fatal collision—or in the alternative, under the control of UniGroup and Defendant Mayflower. Accordingly, Defendant UniGroup is vicariously liable for the acts of Defendant Locke and Defendant Moholland.

181.   At all relevant times, Defendant Mayflower Transit was the agent/subsidiary or servant Defendant UniGroup. Defendant Mayflower Transit was in the course and scope of its agency and servanthood at the time of the fatal collision—or in the alternative, under the control of UniGroup. Accordingly, Defendant UniGroup is vicariously liable for the acts of Mayflower Transit.

182.    At all relevant times, UniGroup and/or, Defendant Mayflower, Defendant Moholland, and/or Defendant Locke were joint venturers or partners of each other in the business of trucking goods and property for profit because of the unique cooperative corporate structure of UniGroup, because of the agency agreement, and because independent agents (or their principals) are owners and sharers of profits of Mayflower Transit, and UniGroup pursuant to the ownership structure and relationships between and among them and similarly situated agents and, therefore, each of them and the partnership or joint venture consisting of each of them is liable for the negligence of any of them committed in the ordinary course of the business of the joint venture or partnership or with authority from any of them.

183.    At all relevant times, as to Plaintiffs and the general public, Mayflower Transit, Defendant Joe Moholland, Defendant Locke, and UniGroup are alter egos of each other and their purported separate identities can be disregarded and each and both of them are liable for the acts committed by either of them and for the negligence of the employees, agents, and servants of either of them.

## COUNT NINE - PUNITIVE DAMAGES AGAINST DEFENDANT NICHOLAS BURIST

184.    Plaintiff incorporates herein by reference all of the allegations of the previous paragraphs, of this Complaint.

185.    Defendant Driver is guilty of such willful misconduct, malice, wantonness, oppression, and an entire want of care sufficient to raise to the presumption of conscious indifference to consequences.

186.    Defendant Driver's misconduct is so aggravating it authorizes,

warrants, and demands the imposition of substantial punitive damages against Defendant Driver pursuant to O.C.G.A. § 51-12-5.1.

187.   Defendant Driver took deliberate actions in choosing to violate Federal Motor Carrier Safety Regulations, State trucking safety regulations, trucking industry standards, and Georgia law by operating a commercial vehicle under the influence of drugs and alcohol, driving recklessly and grossly negligently, and in other ways that shall be proven at the trial of this matter.

188.   Any cap on the amount of punitive damages applied in this case would be unconstitutional for several reasons, including that it contravenes the inviolate right to trial by jury contained in Georgia's Constitution.

## COUNT TEN - PUNITIVE DAMAGES AGAINST DEFENDANTS MAYFLOWER, LOCKE, MOHOLLAND, UNIGROUP AND PAYNE

189.   Plaintiff incorporates herein by reference all of the allegations of the previous paragraphs of this Complaint.

190.   Defendant Locke, Defendant Moholland, Defendant Mayflower, Defendant UniGroup and Defendant Payne have been guilty of such willful misconduct, malice, wantonness, oppression, and an entire want of care sufficient to raise to the presumption of conscious indifference to consequences.

191.   Defendants' misconduct is so aggravating it authorizes, warrants, and demands the imposition of substantial punitive damages against Defendant Locke, Defendant Moholland, Defendant Mayflower, Defendant UniGroup and Defendant Payne pursuant to O.C.G.A. § 51- 12-5.1.

192.    Defendants took deliberate actions in choosing to violate Federal Motor Carrier Safety Regulations, State trucking safety regulations, trucking industry standards, and Georgia law in a number of ways as articulated herein, including but not limited to by allowing their agent and/or employee to operate a commercial motor vehicle under the influence of drugs and alcohol.

193.    Defendant Mayflower, Defendant Moholland, Defendant UniGroup and Defendant Locke knew or should have known that Defendant Driver was unfit and/or unskilled in the shipping and transportation of goods, and chose to not properly or reasonably oversee, orchestrate, and/or supervise this operation.

194.    Mayflower and/or UniGroup had actual and/or constructive notice that Defendant Locke was being used to transport goods.

195.    Mayflower and/or UniGroup had actual and/or constructive notice that Defendants were continuing to use stationery, signs, logos, markings, and equipment that displayed Mayflower's markings/branding.

### COUNT ELEVN - LIABILITY OF NATIONAL INDEMNITY COMPANY

196.    Plaintiff incorporates by herein by reference all of the allegations of the previous paragraphs of this Complaint.

197.    Defendants Mayflower and Locke are motor carriers under both Federal and Georgia law.

198.    At all times relevant to this Complaint, Defendant National Indemnity was the insurance provider for Defendant Locke.

199.    At all times relevant to this Complaint, Defendant National Indemnity

was the insurance provider for Defendant Mayflower.

200.   As the insurance provider for Defendants Locke and Mayflower, Plaintiff may bring a direct action against Defendant National Indemnity for damages sustained in the wreck giving rise to this Complaint.

201.   Plaintiff is entitled to recover from Defendant National Indemnity for the negligence of Defendants Mayflower and Locke, and their employee/agent.

202.   Plaintiff has a cause of action against Defendant National Indemnity and is entitled to recover for their damages.

## COUNT TWELVE – LIABILITY OF VANLINER INSURANCE COMPANY

203.   Plaintiff incorporates herein by reference all of the allegations of the previous paragraphs of this Complaint.

204.   Defendants Mayflower, Locke, Moholland, and UniGroup, are motor carriers under both Federal and Georgia law.

205.   At all times relevant to this Complaint, Defendant Vanliner was the insurance provider for Defendant Moholland.

206.   As the insurance provider for Defendant Mayflower, Defendant Burist, and/or UniGroup, Plaintiff may bring a direct action against Defendant Vanliner for damages sustained in the wreck giving rise to this Complaint.

207.   Plaintiff is entitled to recover from Vanliner for the negligence of Defendants Mayflower, UniGroup, Moholland, and Locke, and their employee/agent.

208.   Plaintiff has a cause of action against Defendant Vanliner and is entitled to recover for plaintiff's damages.

## COUNT THIRTEEN – LIABILITY OF XYZ COMPANIES 1-3

209.    Plaintiff incorporates herein by reference all of the allegations of the previous paragraphs of this Complaint.

210.    Upon information and belief, Defendants Mayflower, Moholland, UniGroup, Burist, Payne, and Locke, have one or more additional policies of excess insurance that may be with carriers other than Defendant National Indemnity, and Defendant Vanliner named herein under Georgia's Direct Action Statute.

211.    Any such insurance providers have responsibility for the actions and inactions of Defendants and are sued under the same cause of action as Defendant National Indemnity and Defendant Vanliner.

212.    That Defendant Mayflower has refused to produce their insurance policy in accordance with the Georgia Statute.

213.    As the insurance provider for Defendant Mayflower, Defendant Locke, Defendant Moholland, Defendant Burist, and Defendant Payne, Plaintiff may bring a direct action against one or more of the entities herein identified as XYZ Companies 1-3 for damages sustained in the wreck giving rise to this Complaint.

214.    Plaintiff is entitled to recover from XYZ Companies 1-3 for the negligence of Defendant Locke, Defendant Moholland, and Defendant Mayflower, and their employee/agent.

215.    Plaintiff has a cause of action against Defendant XYZ Companies 1-3 and is entitled to recover for their damages.

## **DAMAGES**

216.   Plaintiff incorporates herein by reference all of the allegations of the previous paragraphs of the Complaint.

217.   Defendants directly and proximately caused Plaintiff's injuries through one or more of the negligent acts or omissions stated above. Therefore, Defendants are directly and/or vicariously liable for the Plaintiff's injuries that resulted from this wreck.

218.   That as a direct and proximate result of the negligence, gross negligence, carelessness, recklessness, willfulness and wantonness of Defendants, as is set forth more fully above, Plaintiff was injured, resulting in decedent's violent death, has endured pain and suffering, has suffered mentally and emotionally, and have incurred, and has otherwise been damaged and injured.

219.   Plaintiff is entitled to judgment against Defendants for actual, compensatory, and exemplary or punitive damages for personal injuries set forth herein in an amount that is fair, just, and reasonable, plus whatever costs, interest, and attorneys' fees under O.C.G.A. § 13- 6-11 that plaintiff may be entitled as determined by a jury.

## **COUNT FOURTEEN– ESTATE CLAIMS OF MICHAEL ANTHONY HINES, JR.**

220.   Plaintiff Makayla Jania Hines is the duly appointed Personal Representative of the Estate of Michael Anthony Hines, Jr., under the laws of Florida and is therefore the proper party to bring this action to recover for damages on behalf of his estate.

221.   Michael Anthony Hines Jr.'s conscious awareness of the impending collision and of his injuries and impending death constitute damages recoverable by his estate and for which recover is sought herein.

222.   The estate is further entitled to recover funeral and burial expenses on behalf of Michael Anthony Hines, Jr.

## COUNT FIFTEEN– WRONGFUL DEATH OF MICHAEL ANTHONY HINES, JR.

223.   Plaintiff incorporates herein by reference all of the allegations of the previous paragraphs of the Complaint.

224.   Plaintiff, Makayla Jania Hines is the surviving daughter of Michael Anthony Hines, Jr., and the proper party to being the claim for his wrongful death.

225.   At the time of his death, Michael Anthony Hines, Jr. was 36 years old.

226.   Plaintiff Makayla Jania Hines is entitled to recover pecuniary damages arising from the death of Michael Anthony Hines, Jr.

227.   Plaintiff Makayla Jania Hines is entitled to recover damages for the full value of Michael Anthony Hines Jr's life, without deducting for any of the necessary or personal expenses he would have incurred had he lived, for Michael Anthony Hines, Jr's wrongful death caused by Defendants' wrongful acts and/or omissions.

WHEREFORE, PLAINTIFF demands and pray as follows:

   a) That process be issued and service be had upon Defendants as provided by law;

   b) For a trial by a jury comprised of twelve (12) persons as to all issues so triable;

   c) For judgment in favor of Plaintiff and against Defendants;

d) That Plaintiff, Makalya Jania Hines as the Personal Representative of the estate of Michael Anthony Hines, Jr. to recover all damages for all losses compensable under Georgia law as set forth above;

e) Plaintiff Makayla Jania Hines, as surviving daughter of Decedent is entitled to recover compensatory damages for the wrongful death of Decedent, the measure of which under Georgia law is the full value of his life, both economic and intangible, as determined by the enlightened conscience of a fair and impartial jury.

f) That the Court award punitive damages against Defendants;

g) That all expenses and costs of litigation, including attorney's fees be cast against the Defendants; and

h) For such other and further relief as the Court deems just and proper.

Respectfully submitted,

*/s/ Andrew Norden*
**ANDREW NORDEN, ESQ.**
Florida Bar No.: 808121
**AMI ROMANELLI, ESQ.**
Florida Bar No.: 58258
**OSBORNE & FRANCIS, PLLC**
925 S. Federal Hwy., Ste. 175
Boca Raton, FL 33432
Attorneys for Plaintiff
Telephone: (561) 293-2600
Facsimile: (561) 923-8100
Primary:     anorden@realtoughlawyers.com
Secondary:  aromanelli@realtoughlawyers.com
                   asmart@realtoughlawyers.com
Admitted *pro hac vice*

**EXHIBIT A**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## BRUNSWICK DIVISION

KYLE SLOAN, Individually; and as
Personal Representative of the Estates
of Rylie Sloan and Jamie Sloan; KYLE
SLOAN as Surviving Spouse of Jamie
Sloan; KYLE SLOAN as Surviving
Parent of Rylie Sloan; and SUSAN
WEST, Individually; and as the next
friend and natural guardian of K.W., a
minor,

  Plaintiffs,

v.

NICHOLAS BURIST; LOCKE
RELOCATIONS LLC; NATIONAL
INDEMNITY COMPANY;
MAYFLOWER TRANSIT LLC; JOE
MOHOLLAND, INC.; WESCO
INSURANCE COMPANY; AND
XYZ COMPANIES 1-3,

  Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO. 2:22-cv-00076-LGW

**AFFIDAVIT OF
JAMES ESKEW**

**PERSONALLY APPEARED** before me, James Eskew, who, being duly sworn, deposes and states under the penalty of perjury, that the following is true and correct:

1. My name is James Eskew. I am the principal at James Eskew Investigations, LLC.
2. I am over the age of 21 and of sound mind and discretion.
3. I have been an investigator and/or in law enforcement for the past fourteen years. This includes seven years as a Deputy Sherriff with the Greenville, South Carolina Sherriff's Department and seven years with the South Carolina Department of Corrections.



4. I was retained by Hodge and Langley Law Firm, PC to investigate the collision at issue in this litigation.

5. On July 7, 2022 I photographed the commercial motor vehicle involved in the collision with the Plaintiffs on July 1, 2022.

6. I arrived at Kelley's Towing and Recovery in Woodbine, GA on July 7, 2022. Once there, I spoke with Courtney Roundtree, an employee at Kelley's Towing and Recovery. I had spoken to her that same day two or three hours earlier and she was very nice and told me I would be permitted to take pictures of the truck when I arrived. She told me where the truck was located on the lot. Upon my arrival her mood had totally changed, and she was very hostile. She told me that I was no longer allowed to take pictures from inside the lot because she had met with someone associated with an insurance company for the truck and would not allow that. Based upon my law enforcement experience and my observations of her behavior it is my opinion she had been paid money to obstruct my investigation. I observed the commercial motor vehicle and confirmed it was the proper vehicle based on the information she had provided earlier about its location. I took pictures of the truck. The truck I took pictures of is the same truck that is identified in the Georgia Motor Vehicle Crash Report, attached as Exhibit "A". True and accurate copies of the pictures I took are attached as Exhibit "B".

7. The photographs attached in Exhibit "B" include other photographs taken at the above location. These photographs are true and accurate copies of the same.

8. As a part of my investigation, I Googled "Mayflower Moving Georgia." The Mayflower website showed (and continues to show today) five Mayflower locations in Georgia. One of the locations is in Savannah at 5003 Liberty Pkwy, Savannah, GA 31405. The name/account associated is displayed as: "Mayflower." Attached are true and correct website printouts as Exhibit "C".

9. Another part of my investigation was to research Mayflower registration with the Georgia Secretary of State. Mayflower Transit, LLC is registered to do business in the State of Georgia and has been since July 21, 2020. See attached true and correct copies from the Georgia Secretary of State website, attached as Exhibit "D".

FURTHER AFFIANT SAYETH NOT.

_____

James Eskew

2

SWORN TO before me this _23_
day of _February_ _____ 2023.

_Alicia M Chandic_

Notary Public of _SC_

My Commission Expires
_1-14-2031_

# EXHIBIT A

GA. MOTOR VEHICLE CRASH REPORT

| Agency Case Number | Agency NCIC Number | **GEORGIA** | | County | *Date Rec. by GDOT* |
|---|---|---|---|---|---|
| C000745264-01 | GAGSP0000 | **MOTOR VEHICLE CRASH REPORT** | | CAMDEN | |

| Estimated Crash | | Dispatch | | Arrival | | Total Number of | | | Inside City Of |
|---|---|---|---|---|---|---|---|---|---|
| Date | Time | Date | Time | Date | Time | Vehicles | Injuries | Fatalities | |
| 07/01/22 | 14:30 | 07/01/22 | 14:37 | 07/01/22 | 15:03 | 6 | 8 | 4 | |

| Road of Occurrence | I-95 SOUTHBOUND  MM1 | At Its Intersection With | _____ | ☐ Corrected Report |
|---|---|---|---|---|

Not At Its Intersection But  0.29   ☒ Miles ☐ Feet   ☐ North ☒ South   ☐ East ☐ West   Of  ST MARYS ROAD   ☐ Sup To Original

Latitude (Y)  30.7550150086066  (Format)  00.00000   Longitude (X)  -81.6515595021129  (Format)  -00.00000   ☐ Hit And Run?

| Unit # **1** | ☒ Driver ☐ Ped ☐ Bike | LAST NAME BURIST | FIRST NICHOLAS | MIDDLE DEWAYNE | Unit # **2** | ☒ Driver ☐ Ped ☐ Bike | LAST NAME TULLOCH | FIRST HOWARD | MIDDLE ANSEL |
|---|---|---|---|---|---|---|---|---|---|
| ☒ Susp At Fault | | Address 3005 ROANOKE AVENUE | | | ☒ Susp At Fault | | Address 2069 MCNUTT RD | | |

| City NEWPORT NEWS | State VA | Zip 23607 | DOB /1979 | City AUGUSTA | State GA | Zip 30906 | DOB /1961 |
|---|---|---|---|---|---|---|---|

| Driver's License No. T61931071 | Class A | State VA | Country UNITED STATES | Driver's License No. 058700432 | Class AM | State GA | Country UNITED STATES |
|---|---|---|---|---|---|---|---|

| Insurance Co. WESCO INSURANCE COMP | Policy No. WPP1951548 00 | Telephone No. | Insurance Co. USAA | Policy No. 035894692 G 07101 | Telephone No. |
|---|---|---|---|---|---|

| Year 2014 | Make INTERNATIONAL | Model PROSTAR | Year 2015 | Make NISSAN | Model ARMADA |
|---|---|---|---|---|---|

| VIN 3HSDJAPR7EN491357 | Vehicle Color WHI | VIN 5N1BA0NF3FN621968 | Vehicle Color WHI |
|---|---|---|---|

| Tag # 59AP8M | State MO | County ST. LOUIS | Year | Tag # RBG7607 | State GA | County RICHMOND | Year 2023 |
|---|---|---|---|---|---|---|---|

| Trailer Tag # 249030C | State ME | County | Year 2024 | Trailer Tag # WDR112 | State GA | County RICHMOND | Year 2022 |
|---|---|---|---|---|---|---|---|

| ☐ Same as Driver | Owner's Last Name JOE MOHOLLAND, INC. | First | Middle | ☒ Same as Driver | Owner's Last Name TULLOCH | First HOWARD | Middle ANSEL |
|---|---|---|---|---|---|---|---|

| Address 15481 FARM CREEK DRIVE | | | Address 2069 MCNUTT RD | | |
|---|---|---|---|---|---|

| City WOODBRIDGE | State VA | Zip 22191 | City AUGUSTA | State GA | Zip 30906-8767 |
|---|---|---|---|---|---|

| Removed By: KELLEY'S | ☐ Request ☒ List | Removed By: A&A TOWING | ☐ Request ☒ List |
|---|---|---|---|

| Alco Test: 1 | Type: 1 | Results: PEND | Drug Test: 1 | Type: 1 | Results: | Alco Test: 2 | Type: | Results: | Drug Test: 2 | Type: | Results: |
|---|---|---|---|---|---|---|---|---|---|---|---|

| First Harmful Event: 11 | Most Harmful Event: 11 | Operator/Ped Cond: 10 | First Harmful Event: 11 | Most Harmful Event: 11 | Operator/Ped Cond: 1 |
|---|---|---|---|---|---|

| Operator Contributing Factors: | 2 | 10 | 3 | 26 | Operator Contributing Factors: | 1 | 1 | 1 | 1 |
|---|---|---|---|---|---|---|---|---|---|

| Vehicle Contributing Factors: 1 | Roadway Contributing Factors: 1 | Vehicle Contributing Factors: 1 | Roadway Contributing Factors: 1 |
|---|---|---|---|

| Direction of Travel: 2 | Vehicle Maneuver: 5 | Non-Motor Maneuver: | Direction of Travel: 2 | Vehicle Maneuver: 5 | Non-Motor Maneuver: |
|---|---|---|---|---|---|

| Vehicle Class: 7 | Vehicle Type: 4 | Vision Obscured: | Vehicle Class: 1 | Vehicle Type: 11 | Vision Obscured: 1 |
|---|---|---|---|---|---|

| Number of Occupants: 3 | Area of Initial Contact: 3 | Damage to Veh: 4 | Number of Occupants: 2 | Area of Initial Contact: 9 | Damage to Veh: 4 |
|---|---|---|---|---|---|

| Traffic-Way Flow: 3 | Road Comp: 2 | Road Character: 2 | Traffic-Way Flow: 3 | Road Comp: 2 | Road Character: 2 |
|---|---|---|---|---|---|

| Number of Lanes: 6 | Posted Speed: 70 | Work Zone: | Number of Lanes: 6 | Posted Speed: 70 | Work Zone: 0 |
|---|---|---|---|---|---|

| Traffic Control: 7 | Device Inoperative: ☐ Yes ☒ No | Traffic Control: 7 | Device Inoperative: ☐ Yes ☒ No |
|---|---|---|---|

| Citation Information: | | | Citation Information: | | |
|---|---|---|---|---|---|
| Citation #  E03789330 | O.C.G.A. §  40-6-391(a)(1-5) | | Citation # _____ | O.C.G.A. § | |
| Citation #  E03789331 | O.C.G.A. §  40-6-393(A) | | Citation # _____ | O.C.G.A. § | |
| Citation #  E04353617 | O.C.G.A. §  40-6-394 | | Citation # _____ | O.C.G.A. § | |

| **COMMERCIAL MOTOR VEHICLES ONLY** | **COMMERCIAL MOTOR VEHICLES ONLY** |
|---|---|

| Carrier Name: JOE MOHOLLAND, INC. | Carrier Name: |
|---|---|

| Address 15481 FARM CREEK DRIVE | City WOODBRIDGE | State VA | Zip 22191 | Address | City | State | Zip |
|---|---|---|---|---|---|---|---|

| U.S. D.O.T. # 486221 | No. of Axles 4 | G.V.W.R. 03 | U.S. D.O.T. # | No. of Axles 2 | G.V.W.R. |
|---|---|---|---|---|---|

| Cargo Body Type 1 | Vehicle Config. 6 | ☒ Interstate ☐ Intrastate | Fed. Reportable ☒ Yes ☐ No | Cargo Body Type | Vehicle Config. | ☐ Interstate ☐ Intrastate | Fed. Reportable ☐ Yes ☐ No |
|---|---|---|---|---|---|---|---|

| C.D.L.? ☒ Yes ☐ No | C.D.L. Suspended? ☐ Yes ☒ No | C.D.L.? ☐ Yes ☐ No | C.D.L. Suspended? ☐ Yes ☐ No |
|---|---|---|---|

| Vehicle Placarded? ☐ Yes ☒ No | Hazardous Materials? ☐ Yes ☒ No | Vehicle Placarded? ☐ Yes ☐ No | Hazardous Materials? ☐ Yes ☐ No |
|---|---|---|---|

| Haz Mat Released? ☐ Yes ☒ No | Haz Mat Released? ☐ Yes ☐ No |
|---|---|
| If YES:   Name or four Digit Number from Diamond or Box: _____ One Digit Number from Bottom of Diamond: _____ | If YES:   Name or four Digit Number from Diamond or Box: _____ One Digit Number from Bottom of Diamond: _____ |

| ☐Ran Off Road ☐Down Hill Runaway ☐Cargo Loss or Shift ☐Separation of Units | ☐Ran Off Road ☐Down Hill Runaway ☐Cargo Loss or Shift ☐Separation of Units |
|---|---|

GDOT-523 (07/17)

| Unit # | | LAST NAME | FIRST | MIDDLE | Unit # | | LAST NAME | FIRST | MIDDLE |
|---|---|---|---|---|---|---|---|---|---|
| **3** | ☒ Driver ☐ Ped ☐ Bike | SNYDER | GARY | DIXON | **4** | ☒ Driver ☐ Ped ☐ Bike | TIPTON | RAYMOND | EUGENE |
| | ☐ Susp At Fault | Address 31 AMARILLO STREET | | | | ☐ Susp At Fault | Address 38A COLLINGWOOD LANE | | |

| City MORGANTOWN | State WV | Zip 26508 | DOB ▮▮953 | City PALM COAST | State FL | Zip 32137 | DOB ▮▮1967 |
|---|---|---|---|---|---|---|---|
| Driver's License No. C277224 | Class E | State WV | Country UNITED STATES | Driver's License No. T135726674620 | Class E | State FL | Country UNITED STATES |
| Insurance Co. STATE FARM | Policy No. 055 8117-D31-48A | | Telephone No. | Insurance Co. PROGRESSIVE AMERICAN I | Policy No. 914240974 | | Telephone No. |
| Year 2019 | Make CHEVROLET | | Model SILVERADO | Year 2007 | Make NISSAN | | Model XTERRA |
| VIN 1GCUYDED0KZ135846 | | Vehicle Color SIL | | VIN 5N1AN08W47C548103 | | Vehicle Color YEL | |
| Tag # NXX633 | State WV | County MONONGALIA | Year 2023 | Tag # 90JEA | State FL | County | Year 2022 |
| Trailer Tag # | State | County | Year | Trailer Tag # | State | County | Year |

| ☐ Same as Driver | Owner's Last Name SNYDER | First GARY | Middle D | ☒ Same as Driver | Owner's Last Name TIPTON | First RAYMOND | Middle EUGENE |
|---|---|---|---|---|---|---|---|
| Address 31 AMARILLO STREET | | | | Address 38A COLLINGWOOD LANE | | | |
| City MORGANTOWN | State WV | | Zip 26508 | City PALM COAST | State FL | | Zip 31137-0000 |
| Removed By: KELLEYS TOWING | | ☐ Request ☒ List | | Removed By: SOUTHERN CRANE & WRECKER SERVICE | | ☐ Request ☒ List | |

| Alco Test: 2 | Type: | Results: | Drug Test: 2 | Type: | Results: | Alco Test: 2 | Type: | Results: | Drug Test: | Type: | Results: |
|---|---|---|---|---|---|---|---|---|---|---|---|
| First Harmful Event: 11 | | Most Harmful Event: 11 | | Operator/Ped Cond: 1 | | First Harmful Event: 11 | | Most Harmful Event: 11 | | Operator/Ped Cond: 1 | |

| Operator Contributing Factors: | 1 | 1 | 1 | 1 | Operator Contributing Factors: | 1 | 1 | 1 | 1 |
|---|---|---|---|---|---|---|---|---|---|
| Vehicle Contributing Factors: 1 | | Roadway Contributing Factors: 1 | | | Vehicle Contributing Factors: 1 | | Roadway Contributing Factors: 1 | | |
| Direction of Travel: | 2 | Vehicle Maneuver: | 5 | Non-Motor Maneuver: | Direction of Travel: | 1 | Vehicle Maneuver: | 1 | Non-Motor Maneuver: |
| Vehicle Class: | 1 | Vehicle Type: | 2 | Vision Obscured: 1 | Vehicle Class: | 1 | Vehicle Type: | 11 | Vision Obscured: 1 |
| Number of Occupants: | 2 | Area of Initial Contact: | 3 | Damage to Veh: 4 | Number of Occupants: | 2 | Area of Initial Contact: | 12 | Damage to Veh: 4 |
| Traffic-Way Flow: | 3 | Road Comp: | 2 | Road Character: 2 | Traffic-Way Flow: | 3 | Road Comp: | 2 | Road Character: 2 |
| Number of Lanes: | 6 | Posted Speed: | 70 | Work Zone: 0 | Number of Lanes: | 6 | Posted Speed: | 70 | Work Zone: 0 |
| Traffic Control: 7 | | Device Inoperative: ☐ Yes ☒ No | | | Traffic Control: 7 | | Device Inoperative: ☐ Yes ☒ No | | |

**Citation Information:**

| Citation # _____ | O.C.G.A. § _____ |
|---|---|
| Citation # _____ | O.C.G.A. § _____ |
| Citation # _____ | O.C.G.A. § _____ |

**Citation Information:**

| Citation # _____ | O.C.G.A. § _____ |
|---|---|
| Citation # _____ | O.C.G.A. § _____ |
| Citation # _____ | O.C.G.A. § _____ |

| **COMMERCIAL MOTOR VEHICLES ONLY** | **COMMERCIAL MOTOR VEHICLES ONLY** |
|---|---|
| Carrier Name: | Carrier Name: |
| Address          City          State  Zip | Address          City          State  Zip |
| U.S. D.O.T. #          No. of Axles          G.V.W.R. | U.S. D.O.T. #          No. of Axles          G.V.W.R. |
| Cargo Body Type   Vehicle Config.   ☐ Interstate ☐ Intrastate   Fed. Reportable ☐ Yes ☐ No | Cargo Body Type   Vehicle Config.   ☐ Interstate ☐ Intrastate   Fed. Reportable ☐ Yes ☐ No |
| C.D.L.?   ☐ Yes ☐ No   C.D.L. Suspended?   ☐ Yes ☐ No | C.D.L.?   ☐ Yes ☐ No   C.D.L. Suspended?   ☐ Yes ☐ No |
| Vehicle Placarded? ☐ Yes ☐ No   Hazardous Materials? ☐ Yes ☐ No | Vehicle Placarded? ☐ Yes ☐ No   Hazardous Materials? ☐ Yes ☐ No |
| Haz Mat Released? ☐ Yes ☐ No | Haz Mat Released? ☐ Yes ☐ No |
| If YES:  Name or four Digit Number from Diamond or Box: _____ One Digit Number from Bottom of Diamond: _____ | If YES:  Name or four Digit Number from Diamond or Box: _____ One Digit Number from Bottom of Diamond: _____ |
| ☐Ran Off Road ☐Down Hill Runaway ☐Cargo Loss or Shift ☐Separation of Units | ☐Ran Off Road ☐Down Hill Runaway ☐Cargo Loss or Shift ☐Separation of Units |

GDOT-523 (07/17)

| Unit # | LAST NAME | FIRST | MIDDLE | Unit # | LAST NAME | FIRST | MIDDLE |
|---|---|---|---|---|---|---|---|
| **5** ☒ Driver ☐ Ped ☐ Bike | SLOAN | KYLE | GREGORY | **6** ☒ Driver ☐ Ped ☐ Bike | STEPHENS | DAVID | KARL |
| ☐ Susp At Fault | Address 588 KILGORE BRIDGE ROAD | | | ☐ Susp At Fault | Address 174 BLUE GILL WAY | | |

| City | State | Zip | DOB | City | State | Zip | DOB |
|---|---|---|---|---|---|---|---|
| WOODRUFF | SC | 29388 | /1981 | WOODRUFF | SC | 29388 | /1990 |

| Driver's License No. | Class | State | Country | Driver's License No. | Class | State | Country |
|---|---|---|---|---|---|---|---|
| 7864239 | D | SC | UNITED STATES | 105417797 | R | SC | UNITED STATES |

| Insurance Co. | Policy No. | Telephone No. | Insurance Co. | Policy No. | Telephone No. |
|---|---|---|---|---|---|
| ALLSTATE FIRE & CAUSALT | 000000968473334 | | ANNETT HOLDINGS INC SEL | MC115730 | |

| Year | Make | Model | Year | Make | Model |
|---|---|---|---|---|---|
| 2021 | HONDA | PILOT | 2019 | PETERBILT | 579 |

| VIN | Vehicle Color | VIN | Vehicle Color |
|---|---|---|---|
| 5FNYF5H26MB047898 | WHI | 1XPBD49X5KD231524 | BLK |

| Tag # | State | County | Year | Tag # | State | County | Year |
|---|---|---|---|---|---|---|---|
| NKU208 | SC | SPARTANBURG | | FE0103 | IO | POLK | 9999 |

| Trailer Tag # | State | County | Year | Trailer Tag # | State | County | Year |
|---|---|---|---|---|---|---|---|
| | | | | 122776T | TN | | |

| ☒ Same as Driver | Owner's Last Name | First | Middle | ☐ Same as Driver | Owner's Last Name | First | Middle |
|---|---|---|---|---|---|---|---|
| | SLOAN | KYLE | GREGORY | | ANNETT HOLDINGS INC | | |

| Address | Address |
|---|---|
| 588 KILGORE BRIDGE ROAD | 6115 SW LELAND AVENUE |

| City | State | Zip | City | State | Zip |
|---|---|---|---|---|---|
| WOODRUFF | SC | 29388 | DES MOINES | IO | 50321 |

| Removed By: | Removed By: |
|---|---|
| SOUTHERN CRANE & WRECKER SERVICE | ☐ Request ☒ List | KELLEY'S TOWING | ☐ Request ☒ List |

| Alco Test: 2 | Type: | Results: | Drug Test: 2 | Type: | Results: | Alco Test: 2 | Type: | Results: | Drug Test: 2 | Type: | Results: |
|---|---|---|---|---|---|---|---|---|---|---|---|

| First Harmful Event: 11 | Most Harmful Event: 11 | Operator/Ped Cond: 1 | First Harmful Event: 11 | Most Harmful Event: 11 | Operator/Ped Cond: 1 |
|---|---|---|---|---|---|

| Operator Contributing Factors: 1 1 1 1 | Operator Contributing Factors: 1 1 1 1 |
|---|---|

| Vehicle Contributing Factors: 1 | Roadway Contributing Factors: 1 | Vehicle Contributing Factors: 1 | Roadway Contributing Factors: 1 |
|---|---|---|---|

| Direction of Travel: | Non-Motor Maneuver: | Direction of Travel: | Non-Motor Maneuver: |
|---|---|---|---|
| Vehicle Maneuver: | | Vehicle Maneuver: | |

| Direction of Travel: | Vehicle Maneuver: | Non-Motor Maneuver: | Direction of Travel: | Vehicle Maneuver: | Non-Motor Maneuver: |
|---|---|---|---|---|---|
| | | | | 5 | |

| Vehicle Class: 1 | Vehicle Type: 11 | Vision Obscured: | Vehicle Class: 7 | Vehicle Type: | Vision Obscured: 1 |
|---|---|---|---|---|---|

| Number of Occupants: 4 | Area of Initial Contact: 12 | Damage to Veh: 4 | Number of Occupants: 1 | Area of Initial Contact: 12 | Damage to Veh: 4 |
|---|---|---|---|---|---|

| Traffic-Way Flow: 3 | Road Comp: 2 | Road Character: 2 | Traffic-Way Flow: 3 | Road Comp: 2 | Road Character: 2 |
|---|---|---|---|---|---|

| Number of Lanes: 6 | Posted Speed: 70 | Work Zone: 0 | Number of Lanes: 6 | Posted Speed: 70 | Work Zone: 0 |
|---|---|---|---|---|---|

| Traffic Control: 7 | Device Inoperative: ☐ Yes ☒ No | Traffic Control: 7 | Device Inoperative: ☐ Yes ☒ No |
|---|---|---|---|

| Citation Information: | Citation Information: |
|---|---|
| Citation # _____ O.C.G.A. § _____ | Citation # _____ O.C.G.A. § _____ |
| Citation # _____ O.C.G.A. § _____ | Citation # _____ O.C.G.A. § _____ |
| Citation # _____ O.C.G.A. § _____ | Citation # _____ O.C.G.A. § _____ |

| COMMERCIAL MOTOR VEHICLES ONLY | COMMERCIAL MOTOR VEHICLES ONLY |
|---|---|

| Carrier Name: | Carrier Name: ANNETT HOLDINGS INC |
|---|---|

| Address | City | State | Zip | Address | City | State | Zip |
|---|---|---|---|---|---|---|---|
| | | | | 6115 SW LELAND AVENUE | DES MOINES | IA | 50306 |

| U.S. D.O.T. # | No. of Axles | G.V.W.R. | U.S. D.O.T. # | No. of Axles | G.V.W.R. |
|---|---|---|---|---|---|
| | | | 087409 | 4 | 03 |

| Cargo Body Type | Vehicle Config. | Fed. Reportable | Cargo Body Type | Vehicle Config. | Fed. Reportable |
|---|---|---|---|---|---|
| | ☐ Interstate ☐ Intrastate | ☐ Yes ☐ No | 9 | 6 ☒ Interstate ☐ Intrastate | ☒ Yes ☐ No |

| C.D.L.? ☐ Yes ☐ No | C.D.L. Suspended? ☐ Yes ☐ No | C.D.L.? ☒ Yes ☐ No | C.D.L. Suspended? ☐ Yes ☒ No |
|---|---|---|---|

| Vehicle Placarded? ☐ Yes ☐ No | Hazardous Materials? ☐ Yes ☐ No | Vehicle Placarded? ☐ Yes ☒ No | Hazardous Materials? ☐ Yes ☒ No |
|---|---|---|---|

| Haz Mat Released? ☐ Yes ☐ No | Haz Mat Released? ☐ Yes ☒ No |
|---|---|
| If YES: Name or four Digit Number from Diamond or Box: _____ | If YES: Name or four Digit Number from Diamond or Box: _____ |
| One Digit Number from Bottom of Diamond: _____ | One Digit Number from Bottom of Diamond: _____ |

| ☐Ran Off Road ☐Down Hill Runaway ☐Cargo Loss or Shift ☐ Separation of Units | ☐Ran Off Road ☐Down Hill Runaway ☐Cargo Loss or Shift ☐ Separation of Units |
|---|---|

## COLLISION FIELDS

| Manner of Collision: | 4 | Location at Area of Impact: | 1 | Weather: | 2 | Surface Condition: | 1 | Light Condition: | 1 |

## NARRATIVE

1. Vehicle #1 was traveling south on I-95 in the center southbound lane.
2. Vehicle #2 was traveling south on I-95 in the right southbound lane.  Vehicle #2 was towing a utility trailer.
3. Vehicle #3 was traveling south on I-95 in the left southbound lane.
4. Vehicle #4 was traveling north on I-95 in the center northbound lane.
5. Vehicle #5 was traveling north on I-95 in the left northbound lane.
6. Vehicle #6 was traveling north on I-95 in the center northbound lane behind vehicle #4.

While traveling south, vehicle #1 partially entered the right southbound lane behind vehicle #2.  While entering the right lane, the right side of vehicle #1 struck the left side of vehicle #2.  The first area of impact occurred in the right southbound lane of I-95 South.

The initial impact caused vehicle #2 to rotate (jackknife) in a counterclockwise direction.  In an attempt to re-enter the center lane, the driver of vehicle #1 over corrected  he steering to the left.  This caused vehicle #1 to rotate (jackknife) in a counterclockwise direc ion.    As vehicles #1 and #2 rotated across  he southbound lanes, the right side of vehicle #1 struck the left side of vehicle #2.  The second area of impact occurred in the center southbound lane of I-95 Sou h.

As vehicle #1 traveled across the left sou hbound lane, its left side struck the right side of vehicle #3.  The third area of impact occurred in the left southbound lane of I-95 South.

Following the third impact, vehicle #1 began to travel through the center guardrails.  As it traveled through the guardrails, it began to overturn onto its right side.  At he same time, vehicle #2 struck the guardrail with its left side.  As it struck the guardrail, its trailer was separated.   Vehicle #2 struck the guardrail numerous times before coming to rest along the center median of I-95 South.  As vehicle #1 continued through the guardrails, it pushed vehicle #3 into the guardrails.  The four h area of impact occurred where vehicles #1,2, and 3 struck the guardrails.

After traveling through the guardrails, vehicle #1 slid along its side across the northbound lanes.  Vehicle #3 traveled through the guardrails and overturned onto its top. Vehicle #3 slid along its top to final rest in the left northbound lane of I-95 North.

As vehicle #1 slid across the northbound lanes, the driver of vehicle #4 began to brake causing vehicle #4 to skid.  Vehicle #4 skidded north along the center lane before striking the top of the trailer being towed by vehicle #1 with its front.  The fifth area of impact occurred in the center northbound lane of I-95 North.  Following the fifth impact, vehicle #4 traveled into the trailer and came to rest inside the trailer.

In an attempt to avoid striking vehicle #1, the driver of vehicle #5 steered to the right.  Vehicle #5 left the left northbound lane, crossed the center northbound lane, and entered the right northbound lane.  Upon entering the right northbound lane, vehicle #5 struck the top of the sleeper portion of the cab and entered vehicle #1.  The sixth area of impact occurred in the right northbound lane on I-95 North.

In an attempt to avoid vehicle #1, the driver of vehicle #6 braked and began to skid out of  he center northbound lane and into the left northbound lane.  Upon entering the left northbound lane, vehicle #6 struck the rear of the trailer being towed by vehicle #1.  The seven h area of impact occurred in the left, northbound lane of I-95 North.

This investigation was audio and video recorded by Watch Guard 4RE in cars #710, #781, #696, #404. Pictures of the crash scene were obtained by the Specialized Reconstruction Team.  The crash inves igation was turned over to the Specialized Collision Reconstruction Team for a full reconstruction. The related Specialized Collision Reconstruction Team case can be referenced via SCRTI-055-22. The related Georgia Department of Public Safety Incident Report can be referenced via DPS00068004.

## DIAGRAM

INDICATE
NORTH

## PROPERTY DAMAGE INFORMATION

| Damage Other Than Vehicle | Owner |

## WITNESS INFORMATION

| Name (Last, First) | Address | City | State | Zip Code | Telephone Number |
|---|---|---|---|---|---|
| LYNN, MASON | 114 MILLER DRIVE | KINGSLAND | GA | 31548-7103 | |
| STONE, JORDAN | 1724 EDWARDS RD | WOODRUFF | SC | 29388 | |
| HAMMICK, DAVID | 5462 MATANZAS WAY APT 3 | JACKSONVILLE | FL | 32211 | |
| STONE, WILLIAM | 1724 EDWARDS RD | WOODRUFF | SC | 29388 | |

## OCCUPANT INFORMATION

| 1 | Name (Last, First): BURIST, NICHOLAS | | | | Address: 3005 ROANOKE AVENUE NEWPORT NEWS, VA 23607 | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | Age: 42 | Sex: M | Unit # 1 | Position: 1 | Safety Eq: 0 | Ejected: 1 | Extricated: 2 | Air Bag: 0 | Injury: 3 | Taken for Treatment: 1 |
| | Injury Taken To: UF HEALTH SHANDS | By: KINGS BAY EMS | | EMS Notified Time: | EMS Arrival Time: | Hospital Arrival Time: | | | |

| 2 | Name (Last, First): DAVENPORT, CHARLES | | | | Address: 3009 ROANOKE AVENUE NEWPORT NEWS, VA 236073609 | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | Age: 37 | Sex: M | Unit # 1 | Position: 7 | Safety Eq: 0 | Ejected: 4 | Extricated: 1 | Air Bag: 0 | Injury: 1 | Taken for Treatment: 1 |
| | Injury Taken To: CAMDEN COUNTY CORONER | By: CAMDEN CO. CORONER | | EMS Notified Time: 14:31 | EMS Arrival Time: 14:41 | Hospital Arrival Time: | | | |

| 3 | Name (Last, First): HINES, MICHAEL | | | | Address: 3005 ROANOKE AVENUE NEWPORT NEWS, VA 23607 | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | Age: 36 | Sex: M | Unit # 1 | Position: 3 | Safety Eq: 8 | Ejected: 1 | Extricated: 2 | Air Bag: 0 | Injury: 1 | Taken for Treatment: 1 |
| | Injury Taken To: CAMDEN COUNTY CORONER | By: CAMDEN CO. CORONER | | EMS Notified Time: 14:31 | EMS Arrival Time: 14:41 | Hospital Arrival Time: | | | |

GDOT-523 (07/17)        *MAIL TO: Georgia Department of Transportation, CRASH REPORTING UNIT, 935 East Confederate Ave., Atlanta GA 30316-2590*

| 4 | Name (Last, First): TULLOCH, HOWARD | | | | Address: 2069 MCNUTT RD AUGUSTA, GA 30906 | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Age: 61 | Sex: M | Unit #: 2 | Position: 1 | Safety Eq: 0 | Ejected: 1 | Extricated: 2 | Air Bag: 3 | Injury: 3 | Taken for Treatment: 1 |
| | Injury Taken To: UF HEALTH SHANDS | | By: CAMDEN COUNTY EMS | | | EMS Notified Time: | | EMS Arrival Time: | | Hospital Arrival Time: | |

| 5 | Name (Last, First): TULLOCH, VALERY | | | | Address: 2069 MCNUTT RD AUGUSTA, GA 30906-8767 | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Age: 57 | Sex: F | Unit #: 2 | Position: 3 | Safety Eq: 3 | Ejected: 1 | Extricated: 2 | Air Bag: 3 | Injury: 0 | Taken for Treatment: 1 |
| | Injury Taken To: UF HEALTH SHANDS | | By: CAMDEN COUNTY EMS | | | EMS Notified Time: | | EMS Arrival Time: | | Hospital Arrival Time: | |

| 6 | Name (Last, First): SNYDER, GARY | | | | Address: 31 AMARILLO STREET MORGANTOWN, WV 26508 | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Age: 68 | Sex: M | Unit #: 3 | Position: 1 | Safety Eq: 3 | Ejected: 1 | Extricated: 2 | Air Bag: 5 | Injury: 3 | Taken for Treatment: 1 |
| | Injury Taken To: UF HEALTH SHANDS | | By: CAMDEN COUNTY EMS | | | EMS Notified Time: | | EMS Arrival Time: | | Hospital Arrival Time: | |

| 7 | Name (Last, First): SNYDER, BRENDA | | | | Address: 31 AMARILLO STREET MORGANTOWN, WV 26508 | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Age: 67 | Sex: F | Unit #: 3 | Position: 3 | Safety Eq: 3 | Ejected: 1 | Extricated: 2 | Air Bag: 5 | Injury: 3 | Taken for Treatment: 1 |
| | Injury Taken To: UF HEALTH SHANDS | | By: CAMDEN COUNTY EMS | | | EMS Notified Time: | | EMS Arrival Time: | | Hospital Arrival Time: | |

| 8 | Name (Last, First): TIPTON, RAYMOND | | | | Address: 38A COLLINGWOOD LANE PALM COAST, FL 32137 | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Age: 54 | Sex: M | Unit #: 4 | Position: 1 | Safety Eq: 3 | Ejected: 1 | Extricated: 2 | Air Bag: 3 | Injury: 3 | Taken for Treatment: 1 |
| | Injury Taken To: UF HEALTH SHANDS | | By: NASSAU COUNTY EMS | | | EMS Notified Time: | | EMS Arrival Time: | | Hospital Arrival Time: | |

| 9 | Name (Last, First): PETNO, THELMA | | | | Address: 14 CEDARFIELD COURT PALM COAST, FL 32137 | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Age: 65 | Sex: F | Unit #: 4 | Position: 3 | Safety Eq: 3 | Ejected: 1 | Extricated: 2 | Air Bag: 3 | Injury: 3 | Taken for Treatment: 1 |
| | Injury Taken To: UF HEALTH SHANDS | | By: NASSAU COUNTY EMS | | | EMS Notified Time: | | EMS Arrival Time: | | Hospital Arrival Time: | |

| 10 | Name (Last, First): SLOAN, KYLE | | | | Address: 588 KILGORE BRIDGE ROAD WOODRUFF, SC 29388 | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Age: 41 | Sex: M | Unit #: 5 | Position: 1 | Safety Eq: 3 | Ejected: 1 | Extricated: 2 | Air Bag: 5 | Injury: 2 | Taken for Treatment: 1 |
| | Injury Taken To: UF HEALTH SHANDS | | By: NASSAU COUNTY EMS | | | EMS Notified Time: | | EMS Arrival Time: | | Hospital Arrival Time: | |

| 11 | Name (Last, First): SLOAN, JAMIE | | | | Address: 588 KILGORE BRIDGE ROAD WOODRUFF, SC 293889544 | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Age: 43 | Sex: F | Unit #: 5 | Position: 3 | Safety Eq: 3 | Ejected: 1 | Extricated: 2 | Air Bag: 5 | Injury: 1 | Taken for Treatment: 1 |
| | Injury Taken To: UF HEALTH SHANDS | | By: CAMDEN COUNTY EMS | | | EMS Notified Time: 14:31 | | EMS Arrival Time: 14:41 | | Hospital Arrival Time: 15:50 | |

| 12 | Name (Last, First): SLOAN, RYLIE | | | | Address: 588 KILGORE BRIDGE ROAD WOODRUFF, SC 29388 | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Age: 14 | Sex: F | Unit #: 5 | Position: 4 | Safety Eq: 3 | Ejected: 1 | Extricated: 2 | Air Bag: 5 | Injury: 1 | Taken for Treatment: 1 |
| | Injury Taken To: UF HEALTH SHANDS | | By: CAMDEN COUNTY EMS | | | EMS Notified Time: 14:40 | | EMS Arrival Time: 14:50 | | Hospital Arrival Time: 15:24 | |

| 13 | Name (Last, First): WEST, KARA | | | | Address: 194 OLD TIMBER ROAD WOODRUFF, SC 29388 | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Age: 15 | Sex: F | Unit #: 5 | Position: 6 | Safety Eq: 3 | Ejected: 1 | Extricated: 2 | Air Bag: 5 | Injury: 3 | Taken for Treatment: 1 |
| | Injury Taken To: UF HEALTH SHANDS | | By: NASSAU COUNTY EMS | | | EMS Notified Time: | | EMS Arrival Time: | | Hospital Arrival Time: | |

| 14 | Name (Last, First): STEPHENS, DAVID | | | | Address: 174 BLUE GILL WAY WOODRUFF, SC 29388 | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Age: 32 | Sex: M | Unit #: 6 | Position: 1 | Safety Eq: 3 | Ejected: 1 | Extricated: 2 | Air Bag: 0 | Injury: 0 | Taken for Treatment: 2 |
| | Injury Taken To: | | By: | | | EMS Notified Time: | | EMS Arrival Time: | | Hospital Arrival Time: | |

**ADMINISTRATIVE**

| Photos Taken: ☒ Yes ☐ No | By: SCRT-I | | Officer Note: If collision resulted in a fatality, please send prompt notification to the GDOT Crash Reporting Unit via either email at GeorgiaFARS@dot.ga.gov or Fax at (404)635-2963. |
|---|---|---|---|
| Report By: JUSTICE, MYA LOREE #0710 | Agency: GSP\POST 23 | Report Date: 07/01/22 | Checked By: KELCH, C #0404 | Date Checked: 07/08/22 |

GDOT-523 (07/17)

| SUPPLEMENT | | |
|---|---|---|
| **GEORGIA MOTOR VEHICLE CRASH REPORT** | | |
| Agency Case Number: C000745264-01 | Estimated Crash Date: 07/01/22 | Officer Name: JUSTICE, MYA LOREE #0710 |

**NARRATIVE CONTINUED**

Driver #1 advised he was traveling southbound on I-95 in the right lane. He advised everyone was tailgating him and the vehicle in front of him slammed on brakes. He advised he struck the rear of that vehicle and then snatched the wheel to the left. He advised he lost control of his vehicle.

Note: On board dashcam video footage of Vehicle #1 shows no one directly in front of him. It also reveals the preceding SUV was several hundred feet ahead of him and was not on the brakes prior to the collision.

Driver #2 advised he was traveling south on I-95 in the right lane. He advised he felt a vehicle strike the rear of his vehicle and then travel alongside the driver's side of his vehicle. He advised the impact caused him to lose control of his vehicle and travel towards the guardrail.

Driver #3 advised he was traveling south on I-95 in the left lane. He advised he was struck by a semi out of nowhere. He advised the impact forced his vehicle through the guardrail and caused it to overturn.

Driver #4 advised he was traveling northbound on I-95 in the middle lane. He advised he observed the semi crashing through the guardrail and overturning into the northbound lanes. He advised he slammed on brakes but was unable to avoid a crash due to the semi's trailer being across all lanes of travel. He advised he struck the top of the trailer and came to rest inside the trailer. He advised he was then immediately struck in the rear by a truck hauling boats. He advised he was trapped inside the vehicle.

Driver #5 advised he was traveling northbound on I-95 in the left lane. He advised he was initially in the middle lane but went into the left lane to go around a truck. He advised a semi crashed through the guardrail directly into his lane. He advised he was unable to avoid the semi. He advised there was nothing he could do and he did not remember hitting the brakes. He advised his vehicle hit the top of the cab of the overturned semi. Driver #5 advised he was traveling with his wife Jamie, his daughter Riley, and his daughter's friend Kara.

Driver #6 advised he was traveling northbound on I-95 when another 18-wheeler came across the median and guardrail. He advised the 18-wheeler overturned across all lanes of I-95 northbound. He advised he slowed and angled his vehicle in attempt to avoid contact but hit the top of the overturned truck's trailer.

Witness Jordan Stone advised she was in the middle or right lane traveling northbound. She advised she looked up and saw vehicle #5 going through the cab. She advised she ran up to the car afterwards and another subject on scene used her phone to take pictures.

Witness William Stone advised he was in the middle lane and was the next car behind the truck with boats. He advised he saw the truck coming southbound across the centerline and overturn. He advised the semi rolled over onto its side and did not see vehicle #5 brake at all.

Witness Mason Lynn advised he was driving in the right lane on I-95 northbound. He saw a semi jump the middle barrier and cross all lanes of the northbound side and overturn. He advised he assisted in pulling the couple out of vehicle #3. He advised he spoke with the driver of vehicle #1 who was hysterical and in shock. He advised driver #1 told him the other vehicles suddenly stopped in front of him and he lost control of the vehicle. He advised driver #1 did not remember what happened after that.

Witness Alan Hammick advised he was heading south on I-95. He advised he saw a white tractor trailer suddenly turn left and hit several vehicles. He advised the truck then went through the guardrail and rolled onto its side before coming to rest against a TMC tractor trailer.

**ADDITIONAL CITATION INFORMATION**

| Unit # 1 | |
|---|---|
| Citation # E04353616 | O.C.G.A. § 40-8-76.1 |
| Citation # E04353615 | O.C.G.A. § 40-6-393(A) |
| Citation # E04353614 | O.C.G.A. § 40-6-393(A) |
| Citation # E04353613 | O.C.G.A. § 40-6-393(A) |
| Citation # E04353612 | O.C.G.A. § 16-13-2(b) |
| Citation # E04353611 | O.C.G.A. § 40-6-253 |
| Citation # E04353610 | O.C.G.A. § 40-6-49 |
| Citation # E04353609 | O.C.G.A. § 40-6-48 |
| Citation # E04353608 | O.C.G.A. § 40-1-8(b)(2)(E) |

**ADDITIONAL or FULL PAGE DIAGRAM**



Interstate I-95

# EXHIBIT B

## PICTURES OF TRUCK















# EXHIBIT C

## MAYFLOWER WEBSITE PRINTOUTS



**Mayflower**

Moving Services · Packing & More · Moving Type & Advice · Get a Quote

HOME / MOVERS / GEORGIA / SAVANNAH / HILSON VAN & STORAGE

# Trusted Savannah, GA Movers

Get started on your move and request a quote from Mayflower today! See why our top ratings, moving protection and mix and match services make us America's Most Trusted Moving Company.

★★★★★

Our average rating is 3.94 out of 5



## Savannah Movers in Your Neighborhood

Who says moving has to be complicated? Mayflower makes it easy by customizing your moving experience. From our hands-on service to our advanced technology, we're here to guide you Every Step of the Way®. Let's get started!

**ADDRESS**

Hilson Van & Storage
5001 Liberty Parkway
Savannah, GA 31405-5801

**PHONE**

**HOURS**

| | |
|---|---|
| Sunday: | Closed |
| Monday: | 8:00 AM - 5:00 PM |
| Tuesday: | 8:00 AM - 5:00 PM |
| Wednesday: | 8:00 AM - 5:00 PM |
| Thursday: | 8:00 AM - 5:00 PM |



## Get started on your quote today!

Get a Quote



Hi! Mayflower is here to help.



# EXHIBIT D

## GEORGIA SEC'Y OF STATE PRINTOUT



GEORGIA
CORPORATIONS DIVISION

GEORGIA SECRETARY OF STATE
BRAD RAFFENSPERGER

HOME

Back

**BUSINESS SEARCH**

**BUSINESS INFORMATION**

Business Name: **Mayflower Transit, LLC**
Business Type: **Foreign Limited Liability Company**
NAICS Code:
Principal Office Address: **Any legal purpose**
Jurisdiction: **One Premier Drive, Fenton, MO, 63026, USA**
Principal Record Address: **Missouri**
**One Premier Drive, Fenton, MO, 63026, USA**

Control Number: **20132547**
Business Status: **Active/Compliance**
NAICS Sub Code:
Date of Formation / Registration Date: **7/21/2020**
Last Annual Registration Year: **2023**

**REGISTERED AGENT INFORMATION**

Registered Agent Name: **C T Corporation System**
Physical Address: **289 S. Culver Street, Lawrenceville, GA, 30046-4805, USA**
County: **Gwinnett**

Filing History     Name History     Return to Business Search

Office of the Georgia Secretary of State Attn: 2 MLK, Jr. Dr. Suite 313, Floyd West Tower, Atlanta, GA 30334-1530. Phone: (404) 656-2817 Toll-free: (844) 753-7825. WEBSITE https://sos.ga.gov/
© 2015 PCC Technology Group, All Rights Reserved. Version 62.19

Report a Problem?